### district court of the United States
for the Middle district of Pennsylvania

**1 : CV01- 194**

Corey Lorenzo Woodfolk,
natural person  third party

           Petitioner,

'versus'

UNITED STATES OF AMERICA,

           Respondent,

                 /

Case No.

**Writ of Habeas Corpus**

pursuant to: Art. 1, § 9, cl. 2 of
the Constitution of the United
States // § 14, 1 Stat. 73, 81, 82 //
§ 377, 36 Stat. 1156, 1162 // §§ 451,
452, 453, (R.S. §§ 751–753) // § 454,
(R.S. § 754) // §§ 455–61, (R.S. §
755–761) // Art. III, § 2, cl. 1 of
the Constitution

**Affidavit in Support thereof:**

    I, <u>Corey Lorenzo Woodfolk</u>, a natural person, (i.e., living human being), with absolute estate, non-fiction, having first hand knowledge of all facts and matters contained herein the (4) corners of this Instrument No. CLW6HAB321; of age, of sound mind, and competent to testify with regard to any material fact hereto, Do affirm and declare, that [t]he facts contained herein are true, correct, and complete, not misleading, asserted positively; and that [t]his affiant is held to the penalty of perjury, under the Statutue Laws of the United States Federal Republic (c. March 4, Anno domini 1789), and the Universal Laws of Our "Creator" In Truth, so help Me God;

    I, Corey Lorenzo Woodfolk, third party Petitioner, hereinafter (Petitioner); not an attorney, by Special Visitation, [W]ho respectfully submits this Petition for Writ of Habeas Corpus Relief. Petitioner prays this Honorable Court grant this Writ forthwith, and issue an "Order" for the UNITED STATES OF AMERICA, hereinafter (Respondent), to show cause as to why [t]his Court should not grant the Relief herein requested, and in the absence of such response, concede to the Claims herein presented. Petitioner, Claims that Respondent is unlawfully restraining Petitioner's personal Liberties and property; i.e., his physical body, under color of law/authority. Petitioner is being detained against his will at USP-Lewisburg, Pennsylvania.

FILED
SCRANTON

JAN 3 0 2001

PER

## Jurisdiction Is Invoked

**Now Therefore,** Jurisdiction for the instant Petition for Writ of Habeas Corpus Relief is invoked pursuant to: [t]he First Judiciary Act, of (c. September, Anno domini 1789), § 14, 1 Stat. 73, 81-82, which is in historic relation to 31 Car. II, c. 7, 8 Stat. 432-39 (c. Anno domini 1679); Art. I, § 9, cl. 2, of the Constitution of the United States (c. March 4, Anno domini 1789), Art. III, § 2, cl. 1 of same; § 377, 36 Stat. 1156, 1162; § 455, 452, 453, (R.S. §§ 751, 752, 753); § 454, ( R.S. § 754); §§ 455-61, (R.S. § 755-61). This Petition is submitted to the district court of the United States for the Middle district of Pennsylvania, (i.e., a court of competent jurisdiction, as enumerated at: § 11, 1 Stat. 78; § 1, 18 Stat. 470 (in the course of the common law), and §9, 1 Stat. 76). Moreover, this Writ is <u>not</u> to be recharacterized pursuant to: Title, 28 U.S.C. §§ 2255, nor 2241, without first advising Petitioner of such action prior to the Court's motion to do so, whereas, 28 U.S.C. §§ 2255 and 2241, are private law, (i.e., The Code of the Laws of the United States of America), a political subdivision, agency and/or instrumentality of the Constitutional Government of the United States, supra. Such recharacterization <u>would</u> result in a disastrous deprivation of Petitioner's First Amendment ( 1 Stat. 97) Federal Constitutional Right to redress of grievances and access to [t]he Court.

Petitioner, Claims and asserts, that this Petition for Habeas Corpus Relief, presents questions/issues of an "actual" case and "controversy" within the meaning of Article III, § 2, cl. 1, of the Constitution of the United States. It is well settled that the judicial power as conferred by the [C]onstitution, is an indispensable prerequisite to the jurisdiction of the federal courts.

The phrase "case or controversy" has been defined by the Supreme Court as embracing suits in law or equity, instituted according to the regular course of judicial proceedings, appropriate for judicial determination, and raising questions in a form that the judicial power is capable of acting on, presenting a definite and concrete controversy touching the legal relations of the parties having adverse legal interests. In <u>Baker v. Carr</u>, 369 US 186, 198, 7 L.Ed 2d 663, 674, 82 S. Ct. 691 (c. Anno domini 1962), the Supreme Court noted that a federal district court lacks jurisdiction over the subject matter (1) if the cause does not "arise under" the Federal Constitution, laws, or treaties (or fall within one of the other enumerated categories of Art. III; or (2) if it is not a "case or controversy" within the meaning of that phrase in Art. III; (3) or if the cause is not one described by any jurisdictional statute. Petitioner asserts, as herein more fully appears, that this Petition is a case which is justiciable and an "actual controversy" within the meaning of [t]hat compact so vigorously understood. In determining justiciability, as concluded in <u>Powell v. McCormack</u>, 395 US 486, 23 L.Ed 2d 491, 89 S. Ct. 1944, (two) determinations must be made in this regard. <u>First</u> it must be determined whether the claim presented and the relief sought are the type which admit of judicial resolution. <u>Second</u>, we must determine whether the structure of the Federal Government renders the issue presented a "polital question" — that is, not justiciable. In deciding generally whether a claim is justiciable, court <u>must</u> determine whether "the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." <u>Baker v. Carr</u>, supra.

Petitioner asserts standing in the instant cause of action for reasons being: (1) Petitioner is a citizen of the sovereign several State of Maryland; that is, an original party to the Constitution, ratifying the same on April 28, Anno domini 1788; (2) Petitioner asserts that the [H]e is being detained <u>against</u> his will at the capricious whim of Respondents, and that he has a significant personal stake in the outcome of this cause of action, as his personal liberty is being restrained, and his personal property is being unlawfully converted to the use of Respondent, (i.e., his physical body). <u>Flast v. Cohen</u>, 392 US 83, 20 L.Ed 2d 947, 88 S. Ct. 1942 (c. Anno domini 1968).

Regular course of judicial proceedings, are those established for the protection or enforcements of rights, or for the prevention, re-dress, or punishment of wrongs. <u>Smith v. Adams</u>, 130 US 167, 32 L.Ed 895, 9 S. Ct. 566 (c. 1889). A case arises within the meaning of the Constitution, when any question respecting the Constitution, treaties, or the laws of the United States has assumed such a form that the judi-cial power is capable of acting on it. <u>Re Summers</u>, 325 US 561, 89 L.Ed 1795, 65 S. Ct. 1307 (c. 1945). Also See, <u>Aetna Life Ins. Co. v. Haworth</u>, 300 US 227, 81 L.Ed 617, 57 S. Ct. 461 (c. 1937). In <u>Re Summers</u>, supra, it was stated, that to constitute a <u>case or controversy</u>, (1) a declaration on rights as they stand must be sought, not on rights which may arise in the future, (2) there must be an actual controversy over an issue, not a desire for an abstract declaration of law, and (3) the form of the proceeding is not significant, it is the nature and effect which is controlling. It is only where rights, in themsel-ves appropriate subjects of judicial cognizance, are being, or are about to be, affected prejudicially by the application or enforcement

of a statute, that its validity may be called into question by a
suitor, and determined by an exertion of the judicial power. <u>Texas v.
Interstate Commerce Comm.</u>, 258 US 158, 66 L.Ed 531, 42 S.Ct. 261 (c.
1922). Petitioner, asserts that the judicial power is cognizable to
the instant action, and the <u>Rights</u> asserted (abridged) by Petitioner
can be judicially molded. Petitioner, further asserts that the pri-
vate law, (i.e., § 401, 84 Stat. 1260 and § 406, 84 Stat. 1265, codi-
fied at 21 U.S.C. §§ 841(a), 846; 98 Stat. 1998, Codified at 18 U.S.C. §
3582, have been set in motion against Petitioner, and Petitioner has
so been adversely affected thereby. <u>International Longshoremen's &
Warehousemen's Union v. Boyd</u>, 347 US 222, 98 L.Ed 650, 74 S.Ct. (c.
1954).

Attention is also called to the rule that an issue as to whe-
ther a proceeding involves a "case or controversy" within the judi-
cial powers of federal courts <u>constitutes</u> a <u>jurisdictional</u> point and,
as such may be raised at anytime. <u>McGrath v. Kristensen</u>, 340 US 162,
95 L.Ed 173, 71 S.Ct. 224 (c. 1950). <u>California v. LaRue</u>, 409 US 109,
93 S.Ct. 390 (c. 1972). <u>Insurance Corp. v. Compagnie Des Bauxites</u>,
456 US 694, 102 S.Ct. 2099.

§ 2 of Art. III, mandates that the judicial power shall extend to
all Cases <u>arising under</u> this [C]onstitution. It has been long held that
a suit "arises under" the Constitution if a petitioner's claim "will
be sustained if the Constitution ... [is] given one construction and
will be defeated if [it is] given another." <u>Bell v. Hood</u>, 327 US 678,
66 S.Ct. 773, 13 ALR 2d 383 (c. 1946). In <u>Tutun v. United States</u>, 270
US 568, 46 S.Ct. 425 (c. 1926), the court pointed out that whenever the
law provides a remedy enforceable in the court according to the re-

5.

gular course of legal procedure, and that remedy is pursued, there arises a "case" within the meaning of the Constitution whether the subject of the litigation is property or status. Petitioner, asserts that the instant Petition is an available remedy to remove the deprivation of substantive rights as herein claimed, and so pursued. Also See, Bracy v. Gramly, 520 US 899, 138 L.Ed 2d 97, 117 S. Ct. (c. 1997) (quoting Harris v. Nelson, held "Where specific allegations before the Court show reason to believe that Petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, it is the Duty of the Court to provide the necessary facilities and procedures for an adequate inquiry.")

Wherefore, does Petitioner's Claims, as asserted herein, present a "case or controversy" within the meaning of Article III, § 2, cl. 1, of the Constitution of the United States (c. March 4, Anno domini 1789) ?

\* The Court is requested to take judicial notice of all adjudicative facts asserted herein.

\* Petitioner, disclaims any use of the private law; (i.e., The Code of the Laws of the United States of America), and wherever in the (4) corners of this Writ that reference to the Code may be cited, add ..[...], sic it may not be construed as a privilege, nor benefit.

\* Again, this Writ is not to be recharacterized pursuant to: 28 U.S.C. §§ 2255 nor 2241, without first advising Petitioner. Mason v. Myers, 208 F.3d 414 (3rd Cir. c. 2000).

### Statement of The Facts

On or about September 13, anno domini 1994, (and prior thereto/thereafter), "vi et armis" and subjected to undue influence, oppression, unconscionable advantage, and the fraudulent concealment of material facts, procured by Respondent against Petitioner, [inter

alia]; Petitioner, pled guilty to Count (one) of the second super-
seding indictment [JFM-93-0419], alleged against corporate fiction,
**COREY LORENZO WOODFOLK,** [w]ho is a geographical citizen and member
of the independent political society United States of America. This
fiction entity, while its tradename/commercial name, See, 15 U.S.C. §
1127, idem sonans as Petitioner's, it is nonetheless distinct, and
separate. This all upper case [tradename], is indicative of its ori-
gin. This artful cunning, has caused the fraudulent merger of,
Corey Lorenzo Woodfolk, (i.e., [t]he natural person), with COREY
LORENZO WOODFOLK, (i.e., the corporate fiction) created under the laws
of the United States of America. This fiction entity is registered
in Trust, in Puerto Rico. It is falsely presumed that Petitioner,
has transfered his <u>res</u> by mortgage, per 46 U.S.C. § 31322. This
fiasco is played out with the purported hypothecation of Petitioner's
Birth document, (i.e., certificated security/document of title). This
alleged "security device" is registered with the Department of Vital
Statistics and subsequently transferred to the Department of Commerce,
whereby a certificate is issued evidencing the transaction ["certi-
ficate" = "receipt of acknowledgement"] and which constitutes an
abandonment [res derelictal] of the property, and "Title" [time, use,
possession, and interest] thereto by the acts conduct and/or course
of dealing involved in the transaction.

Upon issuance of Social Security Insurance, (card evidencing
obligation), under the Federal Insurance Contribution Act, the
SS-5 Form, operates as a financing statement for which a transfer
or assignment was made, to the corporation, making Petitioner pre-
sumptively the fiduciary, surety, and/or agent, (i.e., contributor

[tort feasor] to be responsible party and bear any liability for the false joint venture for profit and gain set out on [in inland trade, traffic, and commerce], along with other contributors [applicants] under a scheme of limited liability for the payment of debt, which means that the holders of the chattel paper have no liability and are immune from liability under a corporate veil. This fanciful jurisdiction in _rem_ depends solely on the physical control of the _res_ (2) Jurisdiction _in_ _rem_ entails the control of the res - Securities are not treated as chattels but as mere evidences of the existence of a "choice in action" having value in itself (UCC 9-203 (3)), (3) under the Custom of London, the sovereign can apply the property to the payment of any debt claim which depends upon the situs of the property, (4) the situs of the debt is at the domicil of the creditor, (5) it is presupposed, via fraud, that Petitioner is Debtor to a contract (of which he has never been party), for the payment of any claim brought against Petitioner whatsoever (causi debendi). It is further assumed that Petitioner, has received benefits from this United States of America. Petitioner speaks in the negative.

Respondent cannot produce and/or provide any written bilateral agreements signed and witnessed by Petittioner, themselves, and/or its Principals, wherein agreements were made between the parties herein to perform for consideration and benefits, that Respondent have in fact, provided No consideration (but fraud) as a conferred benefit for the worthless [c]urrency in which Respondent disseminates in want of their principals, See, § 16, 38 Stat. 265, amending same by the Act of January 30, Anno domini 1934, codified at 12 U.S.C. § 411;

8.

with such colorable consideration (i.e., Federal Reserve Bank
Notes), when forced upon Petitioner via (non-disclosure and fraud
[inter alia]), in the presumed contracts of which Respondent base
its right to title, hence the contracts themselves are <u>colorable</u>,
therefore, without Lawful consideration given to, pass both the
possession and the property to the Lawful buyer: See, Bouvier's
Dict. of Law, (c. 1839) (Title) defined: #5: "The lawful coin of the
United States will pass the property along with possession." The
further presumption is that, any monies and/or benefits given to the
geographical corporate citizen, (**COREY LORENZO WOODFOLK**), supra, is
considered [dividends] for being a beneficiary in [t]he unilateral
Trust created to fraudulently maintain a given consideration, where-
by compelled performance may be legal. Petitioner, denies all pre-
sumptions and assumptions, as described, supra.

The private law for which Petitioner has been compelled to per-
form is fraudulently maintained for violation of § 401, 84 Stat. 1260,
and § 406, 84 Stat. 1265, codified at 21 U.S.C. §§ 841(a), 846. At the
advice of defense counsel George McDowell, Esq., in the colorable
presence of Assistant United States Attorney(s), Susan Ringler and
Andrea Smith, before the defacto J. Frederick Motz, Chief Judge for
the United States District Court for Maryland; (i.e., a private
municipal court established under Congress' plenary power per Art.
IV, § 3, cl. 2 of the Constitution (March 4, Anno domini 1789). Peti-
tioner, asserts that his conviction was predicated upon this willful
and malicious fraud, in that, Respondent, acting with undue influence,
unconscionable advantage, oppression, and fraudulent concealment of

material facts, subjected Petitioner to private secret law of
which Respondent disclaims legislative construction and surrepti-
tiously sued (claiming crimes against the United States), (2) Res-
pondent used unpromulgated regulatory statutes [ex vi termini], 21
U.S.C. §§ 841(a), 846, to obtain conviction against Petitioner, [et sic]
violated Petitioner's Fifth, Sixth and Seventh (1 Stat. 97) Con-
stitutional Rights and Thirteenth Amendment Constitutional protec-
tion. Further, Respondent has abated Petitioner's Inalienable Right
by God, not waived, to life, liberty, and the pursuit of happiness,
as enumerated by Constitutional Right at Art. XI — (The enumeration
in the Constitution, of certain rights, shall not be construed to
deny or disparage others retained by the people.) Petitioner, claims
that he is <u>not</u> a geographical citizen of the United States of Ameri-
ca, nor property subject to the territorial jurisdiction thereof, but
a Citizen of the sovereign several Union State of Maryland, supra.

For all Claims and Claims for Relief, as asserted herein by
Petitioner, the United States District Court for Maryland, lacked
Subject Matter Jurisdiction, and Personal Jurisdiction over Peti-
tioner, to convict the same of 84 Stat. 1260, nor 84 Stat. 1265,
codified at 21 U.S.C. §§ 841(a), 846.

* The definition of the term "natural person" is given the same mea-
ning as found therein Black's Law Dictionary, 6th ed., and as defined
by the Supreme Court in <u>Rowland v. California Men's Colony</u>, 506 US —,
121 L.Ed 2d 656, 113 S.Ct. 716.

## Questions Presented

1. Does Petitioner's Claims, as asserted herein, present a "case or controversy" within the meaning of Article III, § 2, cl. 1, of the Constitution of the United States ? :

2. Did the Court lack personal jurisdiction over Petitioner, where Petitioner is not amenable to the territorial jurisdiction of the United States of America ?

3. Was Petitioner's Fifth, Sixth, and Seventh Amendment Right, and Thirteenth Amendment Constitutional protection violated where Respondent used private law ( 84 Stat. 1260 and 84 Stat. 1265), codified at 21 U.S.C. §§ 841(a), 846, to obtain conviction against Petitioner ?

4. Was Petitioner's Fifth, Sixth, Seventh, and Ninth Amendment Constitutional Rights violated where Respondent used unpromulgated regulatory statutes [ex vi termini], 21 U.S.C. §§ 841(a), 846, to obtain conviction against Petitioner ?

5. Did the Court lack subject matter jurisdiction, and personal jurisdiction over Petitioner, to try and convict Petitioner for unpromulgated regulatory statutes, 21 U.S.C. §§ 841(a), 846 ?

6. Can Respondent fail to adhere to the mandates of 49 Stat. 500, codified at 44 U.S.C. § 1505(a);  80 Stat. 379, codified at 5 U.S.C. § 552; Executive Order 11030; 84 Stat. 1245, codified at 21 U.S.C. § 811 ?  and if not can Petitioner be adversely affected by the regulations therefrom ?

7. Is the guarantee of due process of law, Fifth, Sixth Amendment Rights of the Constitution, waived where Petitioner labored under fraudulent concealment of material facts, and does the same waiver remove the Right to trial by jury at common law ?

8. Did Congress exceed it's Constitutionally enumerated exercise of power in violation of Art. IV, § 3, cl. 1 of the Constitution, by the erection of it's agency and/or federal state; (i.e., UNITED STATES OF AMERICA), into the Jurisdiction of the several State of Maryland, causing the deprivation of Petitioner's Fifth, Sixth, Seventh and Ninth Amendment Federal Constitutional Rights ?

9. Is Petitioner, actually innocent of the conviction, as it currently stands, 21 U.S.C. §§ 841(a), 846 ?

10. Did Petitioner's Constitutionally defective indictment violate Petitioner's Fifth and Sixth Amendment Federal Constitutional Rights, and subsequently divest the United States District Court for Maryland of subject matter jurisdiction ?

Petitioner's Fifth, Sixth, and Seventh Amendment
Constitutional Rights and Thirteenth
Amendment Constitutional protection
was violated where Respondent acting
with undue influence subjected
Petitioner to private law of which
Respondent disclaims legislative
construction and surreptitiously sued
claiming crimes against the United
States in a non-Constitutional court

### Claim I

In this republican system of government, as asserted by American founders in the Declaration of Independence, all Men (and Women) are created equal, and are equally endowed by their Creator with certain Inalienable Rights, those listed in the Declaration of Independence being the Rights to life, liberty, and the pursuit of happiness, or in the less poetic phrasing of the Fifth Article of Amendment to the Constitution of the United States: Life, liberty and property. This list, of course is not exhaustive, as articulated in the Ninth and Tenth Articles of Amendment to the Constitution of the United States (1 Stat.97), and all, individually and collectively, are accountable in the framework of the "Laws of Nature." In Federalist No. 39 (January 16, Anno domini 1788), Madison, emphatically states:

" we may define a republic to be, or at least may bestow that name on, a government which derives all its powers directly or indirectly from the great body of the people."

He further states in Federalist No. 10 (November 22, Anno domini 1787):

" it may be concluded, that a pure Democracy, by which I mean, a Society, consisting of a small number of citizens, who assemble and administer the Govern-

13.

ment in person, can admit of no cure for the mischiefs of faction." ... "Hence
it is, that such Democracies have ever been spectacles of turbulence and conten-
tion; have ever been found incompatible with personal security, or the rights of
property; and have in general been as short in their lives, as they have been
violent in their deaths."

By establishing these principles prior to addressing the reasons
for , and the power and operation of, government, American Founders:
Danl Carroll, James Madison Jr., Nicholas Gilman, Rufus King, Roger
Sherman, Hu Williamson, and Alexander Hamilton, to name a few, preserved
the essence of English and American-lineage Common Law which evolved
and was proven by cultural experience over many hundreds of years. The
Magna Charta, drafted by King John in (c. Anno domini 1215), is commonly
recognized as the point of demarcation so far as a formal proclamation
of common rights is concerned. The fact that Due Process is a "creature"
of bedrock import characterizes the specifically delegated authority
enumerated in the Constitution. The Founders went on to say that go-
vernments are established among Men for the sole purpose of securing
inherent Rights, and governments so established may rule only by the con-
sent of the Governed. (Quoting Darnells case, to wit:)

"The law saith expressly, "No freeman shall be imprisoned without due process
of Law, "if the meaning of these words per legem terrae, were but true .. according
to the [l]aws .. and per speciale mandatum" etc. be with the meaning of those words,
"according to the laws," then this act has done nothing.

The legal effect of the Declaration of Independence was to make
each new State a separate and independent sovereign over which there
was no other government of superior power or jurisdiction. In M'Ilvaine
v. Coxe's Lessee, 8 US (4 Cranch) 209, 212 (c. 1808), the Court held:

" This opinion is predicated upon a principle which is believed to be un-
deniable, that the several states which composed this Union, so far at least as
regarded their municipal regulations, became entitled, from the time when they
declared themselves independent, to all the rights and powers of sovereign states,
and that they did not receive them from concessions made by the British King.
The treaty of peace contains a recognition of their independence, not a grant of it.
From hence it results, that the laws of the several state governments were the laws
of the sovereign states, and as such were obligatory upon the people of such state,
from the time they were enacted."

A further expression of import is found in Harcourt v. Gaillard,
25 US (12 Wheat.) 523, 526, 527 (c. 1827), where the Court stated:

"There was no territory within the United States that was claimed in any
other right than that of some one of the confederated states; therefore, there
could be no acquisition of territory made by the United States distinct from, or
independent of some one of the states."

Each declared itself sovereign and independent, according to the limits of
its territory.

[T]he soil and sovereignty within their acknowledged limits were as much
theirs at the declaration of independence as at this hour.

This condition of supreme sovereignty of each State over all property
and persons within the borders thereof continued notwithstanding the
adoption of the Articles of Confederation. In Article II of that do-
cument, it was expressly stated:

Article II. Each state retains its sovereignty, freedom, and independence,
and every Power, Jurisdiction and right, which is not by this confederation ex-
pressly delegated to the United States, in Congress assembled.

The essence of the retention of state jurisdiction was embodied
in Art. 1, § 8, cl. 17 of the Constitution of the United States, which
reads as follows:

"To exercise exclusive Legislation in all Cases whatsoever, over such District
(not exceeding ten Miles square) as may, by Cession of particular States, and
the Acceptance of Congress, become the Seat of the Government of the United States,

and to exercise like Authority over all Places purchased by Consent of the Legisla-
ture of the State in which the Same shall be, for the Erection of Forts, Maga-
zines, Arsenals, dock-Yards, and other needful Buildings; ....

The [C]onstitution (c. March 4, Anno domini 1789), vests <u>all</u>
authority in a governmental [entity] designated as the United States.
See, Art. 1, § 8, cl. 17, 18. No authority is conceivably  conferred per
Constitutional mandate upon an <u>entity</u> known as <u>United States of America</u>.
This scheme was made possible by the emergence of a second or shadow
government. **Note:** Wherever in this Writ [y]ou shall read government,
except were specifically provided for, it <u>shall</u> mean the shadow govern-
ment that administers <u>The Code of the Laws of the United States of
America</u>, not the Constitutional government of (c. Anno domini 1789).

The emergence of this government was noted by the Honorable
Justice Harlan in one of his more lucid criticisms in his dissenting
opinion in <u>Dowles v. Bidwell</u>, 182 US 244, 45 L.Ed 1088, 21 S. Ct. 770
(c. 1901):

"The idea prevails with some - - indeed, it found expression in argu-
ments at the bar - - that we have in this country substantially or practically two
national governments, one to be maintained under the constitution, with all its
restrictions; the other to be maintained by Congress outside and independently of
that instrument, by exercising such powers as other nations of the earth are accus-
tomed to exercise. It is one thing to give such a Latitudinarian construction to
the Constitution as will bring the exercise of power by Congress, upon a particular
occasion or upon a particular subject, within its provisions. It is quite a diffe-
rent thing to say that Congress may, if it so elects, proceed outside the Constitu-
tion. The glory of our American system of government is that it was created by a
written constitution which protects the people against the exercise of arbitrary,
unlimited power, and the limits of which instrument may not be passed by the go-
vernment it created, or any branch of it, or even by the people who ordained it,
except by amendment or change of its provisions."

16.

The notions of such capricious despots did not go unnoticed
by the originals framers; as evidenced in Federalist No. 41,
(January 19, Anno domini 1788), Madison stated:

> "A dangerous establishment can never be necessary or plausible, so long as
> they continue a united people. But let it never for a moment be forgotten,
> that they are indebted for this advantage to their Union alone. The moment
> of its dissolution will be the date of a new order of things."

At H.R. 10000, Act of June 30, Anno domini 1926, [w]e find private
legislation (jurisdiction); which states in pertinent part:

> "Be it enacted by the Senate and House of Representatives of the United States
> of America in Congress assembled, That the fifty titles hereinafter set forth are
> intended to embrace the laws of the United States, general and permanent in their
> nature, in force on the 7th day of December, 1925, compiled into a single volume
> under the authority of Congress, and designated "The Code of the Laws of the United
> States of America." [underscore added] Sec. 2 (a) states: "The matter set forth
> in the Code, evidenced as hereinafter in this section provided, shall establish prima
> facie the laws of the United States." [underscore added] Sec. 2 of said Act confirms
> the jurisdiction and applicability of the laws of the Code; to wit, "In all courts,
> tribunals, and public offices of the United States, at home or abroad, of the District
> of Columbia, and of each State, Territory, or insular possession of the United
> States." Sec. 2(c) states: "The Code may be cited as "U.S.C."

Therefore, citation of the United States Code, is in fact, a citation
of The Code of the Laws of the United States of America, not the
statute law of the United States (c. 1789). See, Murrell v. Western
Union Tel. Co., 160 F.2d 787, 788 (c. 1947), which stated:

> "The United States Code was not enacted as a statute, nor can it be construed
> as such. It is only a prima facie statement of the statute law. The statutes collec-
> ted in it did not change their meaning nor acquire any new force by their inclusion.
> If construction is necessary, recourse must be had to the original statutes themsel-
> ves."

[T]his private law, obviously concluded, in that, the Constitution
delegates authority to the United States, not the United States of

America. Art. 1, § 8, cl. 18, of the Constitution of the United States:

> To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the <u>Government</u> of the <u>United States</u>, or any Department or Officer thereof.

In <u>United States v. Bevans</u>, 16 US (3 Wheat.) 336 (c. 1818), the Court reinforces the principle of State sovereignty:

"The exclusive jurisdiction which the United States have in forts and dock-Yards ceded to them, is derived from the express assent of the states by whom the cessions are made. It could be delivered in no other manner; because without it, the authority of the state would be supreme and exclusive therein, 3 Wheat., at 350, 351.

The article which describes the judicial power of the United States is not intended for the cession of territory or of general jurisdiction. ...

It is observable that the power of exclusive legislation (which is jurisdiction) is united with cession of territory, which is to be the free act of the states. It is difficult to compare the two sections together, without feeling a conviction, not to be strengthened by any commentary on them, that, in describing the judicial power, the framers of our constitution had not in view any cession of territory; or, which is essentially the same, of general jurisdiction, 3 Wheat., 388.

Territorial legislation has [without question], limited application. It's subsequent limits are subject to the territorial soreignty of the United States (Art. IV, § 3, cl. 2 of the Constitution of the United States.) At 18 U.S.C. § 5, [w]e find United States defined:

"The term "United States" as used in this title in a territorial sense, includes all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone."

The footnotes of the Historical and Statutory Notes are equally convincing as to the (jurisdiction) of [t]his private <u>statement</u> law:

18.

Based on Title 18, U.S.C., 1940 ed., §§ 39, 133, 346, 381, 502, and 632, and § 40 of Title 50, U.S.C., 1940 ed., War and National Defense (June 15, 1917, c. 30, Title XIII, § 1, 40 Stat. 231).

All of these sections and parts of sections were derived from § 1 of Title XIII of said Act of June 15, 1917.

The remainder of said § 39 of Title 18, U.S.C., 1940 ed., which was derived from §§ 2, 3, and 4 of Title XIII of the Act of June 15, 1917, relating to jurisdiction and other matters, is almost entirely obsolete, The provisions still in force are incorporated in § 3241 of this title.

At 18 U.S.C. § 3241, we find legislation for concurrent jurisdiction. The Historical Notes make mention, but not limited to, the following:

"Based on Title 18, U.S.C., 1940 ed., §§ 39, 574; sections 23, 101, 1406 of Title 48, U.S.C., 1940 ed., Territories and Insular Possessions";

The revised section simplifies and clarifies the federal jurisdiction of the district courts of the Territories and Possessions. ...

At 18 U.S.C. § 10, we find "Interstate commerce" defined:

"The term "interstate commerce" as used in this title, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territiory, Possession, or the Dustrict of Columbia.

Again, the evidence is insurmountable as to the conclusive application of the [C]ode. The definition of the term "State" as included in the above cite as used in both the United States Code, which is not a statute, Murrell v. Western Union Tel. Co., supra; but [ex vi termini] is called a [statute], and in the codes of the various States is essential to understanding that most title sections in the United States Code presumes application [to the unlearned legal jurist] in federal "States" such as the District of Columbia, Puerto Rico, etc., and not within the several States which are parties to the Constitution of the United States. The distinction in 18 U.S.C. § 7(3)

is subtle, but becomes clearer when read very carefully. The Special Territorial Jurisdiction, where the United States Code is concerned is applicable, embraces:

(3) "Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building."

In consulting the definition of "Special maritime and territorial jurisdiction of the United States, the evidence in overwhelming:

"The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes: (1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States <u>or any citizen thereof</u>, or any <u>corporation</u> created by or under the laws of the United States." ... [underscore added]

From the above referenced citation, it is clear that every geographical citizen of the United States, is at all times subject to and moving in the special maritime and territorial jurisdiction, irrespective as to where he/she may physically be. While the term State has been to the laymen, (as also evidenced in § 7(1)(3)) an anamoly, consulting the Buck Act definition of "State" is about the most straight forward definition of "State" which refer to the federal States; 4 U.S.C. § 110:

§ 110. Same; definitions
As used in sections 105-109 of this title-- ...

(d) The term "State" includes any Territory or possession of the United States.

(e) The term "Federal area" means any land or premises held or acquired by or for the use of the United States or any department, establishment, or <u>agency</u> of the United States. [underscore added]

In <u>Commonwealth v. Young</u>, Brightly, N.P. 302, 309 (Pa. 1818),
the Supreme Court for Pennsylvania held:

"The legislation and authority of congress is <u>confined</u> to cessions by par-
ticular states for the <u>seat</u> of government, and purchases made by consent of the le-
gislature of the state, for the purpose of erecting forts. The legislative power
and exclusive jurisdiction remained in the several states, of all territory within
their limits, not ceded to, or purchased by, congress, with the assent of the state
legislature, to <u>prevent</u> the <u>collision</u> of legislation and authority between the
United States and the several states. [underscore added] Also See, <u>United States v.
Bevans</u>, supra.

In determining the application of the Code, and because recourse
is to be had only by resorting to the original statute law, any Act
of Congress <u>must</u> define its appropriate limits as not to exceed Con-
stitutionally enumerated powers, and to continue the federal and state
balance which untimately comprises this Union. At Rule 54(c) of the
Federal Rules of Criminal Procedure, hereinafter (F.R.Cr.P.), we find,
Acts of Congress defined:

Application of Terms.  As used in these rules the following
terms have the <u>designated</u> meanings.

"Act of Congress" includes any act of Congress locally appli-
cable to and in force in the District of Columbia, in Puerto Rico, in a territory
or in an insular possession.

[W]e now turn to the application and jurisdiction of the Compre-
hensive Crime Control Act, (Pub.L. 91-513, Title II, § 101, October 27,
Anno domini 1970, 84 Stat. 1242) codified at 21 U.S.C. §§ 801 et seq.
Firstly, Congress has plenary power in territory and possessions be-
longing to the United States, Art. IV, § 3, cl. 2, of the Constitution.
This limited application is defined in <u>Hooven & Allison Co. v. Evatt,
Ohio</u>, 324 US 652, 89 L.Ed 1252, 65 S. Ct. 870 (c. 1945).

The "Controlled Substances Act" was enacted to regulate con-
trolled substances in enumerated jurisdictions. See, <u>Nigro v. US</u>,
276 US, Chief Justice Taft, in delivering the opinion of the Court,
stated, in part:

" .... In interpreting the (Harrison) Act, we must assume
it is a taxing measure, for <u>otherwise</u> it is <u>no law</u> at all. If it is a mere act for
the <u>purpose</u> of <u>regulating</u> the purchase of opiate and other drugs, it is <u>beyond</u>
the power of Congress and must be regarded as invalid just as the Child Labor
Act of Congress was held to be in <u>Bailey, Collector v. Drexel Furniture Company</u>,
259 US 20." [underscore added]

In the same case, Nigro, supra, Justice Reynolds, in a Separate
opinion states in part:

"... The plain intent is to control the traffic within the
States by preventing sales except to registered persons and holders of prescrip-
tions, and this amounts to an attempted regulation of something <u>reserved</u> to the
States."

Whether or how far opium, tobacco, diamonds, silk, etc., may be sold within
their borders is primarily for the States to decide; the Federal Government <u>may
not</u> take <u>direct</u> regulation of such matters." [underscore added]

Sections relating to drug abuse prevention and control are con-
tained in Chapter 13 of Title 21. At 21 U.S.C. § 802, Subchapter I - -
Control and Enforcement, Part A - - Introductory Provisions; here we
find critical definitions at 21 U.S.C. § 802 (26)(28):

(26) The term "State" means any State, territory, or possession of the
United States, the District of Columbia, the Commonwealth of Puerto Rico, the
Trust Territory of the Pacific Islands, and the Canal Zone.

(28) The term "United States", when used in a geographical sense, means all
places and waters, continental and insular, and subject to the jurisdiction of
the United States.

Chapter 13 of Title 21 is divided into two subchapters: Sub-
chapter I - - Control and Enforcement, includes §§ 802-904; Sub-
chapter II - - Import and Export, includes §§ 951-958. Definitions at

21 U.S.C. § 802 (26)(28), apply to Subchapter I. For obvious reasons, enforcement [statutes] in Subchapter I are of primary concern, and (2) import and export requirements in Subchapter II of necessity rely on territotial application in Subchapter I.

This territorial application of the Controlled Substances Act, is clear and convincing. Pub.L. 91-513, Title II, § 401, October 27, Anno domini 1970, 84 Stat. 1260 and Pub.L. 91-513, Title II, § 406, October 27, Anno domini 1970, 84 Stat. 1265, codified at 21 U.S.C. §§ 841 (a) and 846, has limited territorial application.

At the [preamble] of § 801 of the Controlled Substances Act, it gives a brief Congressional finding in relation to the effect of drugs on intersate commerce. Again, as stated, 18 U.S.C. § 10, supra, this [t]erm is only subject in territorial application. See, <u>Kanazawa Limited v. Sound, Unlimited</u>, C.A. Guam (c. 1971), 440 F.2d 1239, stating:

"Commerce in Guam is commerce "in any Territory of the United States" as phrase is used in section 1 of Title 9."

The statute law, codified at 18 U.S.C. § 10, is § 2(b), 41 Stat. 325. At Federalist No. 42 (January 22, Anno domini 1788), Madison, we find for historic credibility, in relation to the commerce clause:

"A very material object of this power was the relief of the States which import and export through other States, from the improper contributions levied on them by the latter.

To those who do not view the question through the medium of passion or of interest, the desire of the commercial States to collect in any form, an indirect revenue from their uncommercial neighbours, must appear not less impolitic than it is unfair; since it would stimulate the injured party, by resentment as well as interest, ...

The United States, (c. Anno domini 1789) supra, technically has subject matter jurisdiction, <u>not</u> geographical or territorial juris-

diction in the several States. Since there is <u>no</u> Constitutionally enumerated power for the [u]nited States to regulate drugs or any other commodities within the several States, <u>Nigro v. US</u>, supra, legislation (jurisdiction) <u>must</u> of necessity be promulgated under Congress' plenary power — Article IV, § 3, cl. 2, legislative jurisdiction in the geographical United States; If <u>not</u> it is patently unconstitutional and of no lawful effect. <u>Marbury v. Madison</u>, 5 US 137, 2 L.Ed 60.

It must also be conceded of the Controlled Substances Act, supra, that the Attorney General <u>must</u> promulgate regulations for statutory authority evidenced in Subchapter I. This mandate is set out at Title II of Pub.L. 91-513, October 27, Anno domini 1970, 84 Stat. 1242, (Pub.L. 91-513, Title II, § 201, October 27, Anno domini 1970, 84 Stat. 1245) codified at 21 U.S.C. § 811(a)), and Pub.L. No. 74-220, 49 Stat. 500, ch. 417, codified at 44 U.S.C. § 1505(a), (Pub.L. No. 79-404, 60 Stat. 237, ch. 324; Pub.L. No. 89-554, 80 Stat. 379, codified at 5 U.S.C. § 552(a).) Petitioner asserts that <u>no</u> promulgation has been made for any of the above cited authorities.

We turn now to <u>courts</u> of the United States, that the venue and jurisdiction of such may be established. In Federalist No. 81, (May 28, Anno domini 1788), Hamilton, states:

"The judicial power of the United States is (by the plan of the convention) to be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish."

The power of constituting inferior courts is evidently calculated to obviate the necessity of having recourse to the supreme court, in every case of federal cognizance. It is intended to enable the national government to institute or authorise in each state or district of the United States, a tribunal competent to the determination of matters of national jurisdiction within its limits.

See, § 25, Judiciary Act of (c. Anno domini 1789), 1 Stat. 85.

24.

All cases prosecuted in the United States District Courts,
the venue of such being proscribed by the [C]ode, is the subject
of Congress' plenary power, Art. IV, § 3, cl. 2. These are not
Constitutional courts, limited to the judicial authority conferred
per Art. III, § 2, cl. 1, of the Constitution. At 28 U.S.C. § 132,
we find for authority, the creation and composition of the district
courts, Historical and Revision Notes:

Based on title 28, U.S.C., 1940 ed., § 1, and § 641 of title 48, U.S.C.,
Territories and Insular Possessions (April 30, Anno domini 1900, ch. 339, § 86,
31 Stat. 158)

Other portions of section 1 of title 28, U.S.C., 1940 ed., are incorporated
in sections 133 and 134 of this title. The remainder of section 641 of title 48,
U.S.C., 1940 ed., is incorporated in sections 91 and 133 of this title.

At 28 U.S.C. § 133, we find, appointment of judges to [judicial]
districts. It is clear that the creation of the United States Dis-
trict Court, 28 U.S.C. § 132(a), is a territorial court, in exer-
cise of claims and settlements of and between property and posse-
ssions belonging/subject to the United States. Further qualifica-
tions are found at Mookini v. United States, 303 US 201, 82 L.Ed
748, 58 S.Ct. 543 (c. 1938), (held "The term District Court of the
United States, as used in the rules, without an addition expressing
a wider connotation, has its historic significance. It describes the
constitutional courts created under article 3 of the constitution.
Courts of the Territories are legislative courts, properly speaking,
and are not District Courts of the United States. ...")
Again at Balzac v. Porto Rico, 258 US 298, 66 L.Ed 627, 42 S.Ct.
343, at 258 US 312 (c. 1922), the Court held:

"The United States District Court is not a true United States court es-
tablished under article 3 of the Constitution to administer the judicial power of

the United States therein conveyed. It is created in virtue of the sovereign congres-
sional faculty, granted under article 4, § 3, of that instrument, of making all
needful rules and regulations respecting the territory belonging to the United
States. The resemblance of its jurisdiction to that of true United States courts,
in offerring an opportunity to non residents of resorting to a tribunal not subject
to local influence, does not change its character as a mere territorial court."

Criminal jurisdiction of the United States, found at § 291, 36
Stat. 1167, codified at 18 U.S.C. § 3231:

"The district courts of the United States shall have original juris-
diction, exclusive of the courts of the <u>States</u>, of all offenses against the laws of
the United States."

Nothing in this title shall be held to take away or impair the jurisdic-
tion of the courts of the <u>several States</u> under the laws thereof. [underscores added]

Finally, the matter is ultimately put to rest by the original
Judiciary Act of September 24, Anno domini 1789. The first section which
speaks to the authority of the United States is § 9, 1 Stat. 76:

Sec. 9. And be it further enacted, That the district courts (c) shall have,
exclusively of the courts of the several States, cognizance of all crimes and
offences that shall be cognizable under the authority of the United States ....

The United States District Courts, are territorial courts, and
the <u>in rem</u> action that it adjudicates is an admiralty/maritime action,
which proceeds "in the course of the civil law," contrary to due pro-
cess in the course of the common law secured by the Fifth, Sixth, and
Seventh Articles of Amendment, and presumed by the "arising under"
clause at Article III, § 2, cl. 1 of the Constitution. The venue of
the subject courts being proscribed by the Code, 92 Stat. 2668,
codified at Chapter 85, 28 U.S.C. §§ 1330-1368.

However, in at least some legislation, court nonmenclature was
avoided, as was the case in the Judiciary Act of March 3, Anno domini
1911, in statutory language governing transition from territorial

to Article III courts. The fact that territorial courts were abo-
lished with the admittance of a territory to the Union of several
States is verified at §§ 62-64 of the Act of March 3, Anno domini
1911, ch. 231, 36 Stat. 1104. The subject sections in question, were
derived from §§ 567-68 of the Revised Statutes of (c. 1878), pp. 97,
so they weren't new in (c. 1911) or c. 1878, but originated a consi-
derable time before. They clearly demonstrate that the nature of
courts of the United States is an either/or proposition: Either [t]hey
must be district courts of the United States, vested with judicial
power of the United States via Article III, § 1, of the Constitution,
or they must be Article I legislative courts, with territorial courts
having jurisdiction limited to territory subject to Congress' Arti-
cle IV, § 3, cl. 2, legislative authority. In <u>Thomas S. Williams v</u>.
United States, 289 US 553-581, held:

"That judicial power apart from that article may be conferred by Congress
upon legislative courts, as well as upon constitutional courts, is plainly
apparent from the opinion of Chief Justice Marshall in American Ins. Co. v. Bales
of Cotton, 1 Pet. 511, 546, 7 L.Ed. 243, 256, dealing with the territorial courts.
Justice Marshall stated, "The jurisdiction with which they are invested, is not
part of that judicial Power which is defined in article 3 of the Constitution,
but is conferred by Congress, in the execution of those general powers which
that body possesses over the territories of the United States."

In (c. June, 1957), the government published a work entitled,
Jurisdiction Over Federal Areas Within the States: Report of the In-
terdepartmental Committee for the Study of Jurisdiction Over Federal
Areas With the States, Part II, is the definite study on the issue:

"The Constitution gives express recognition to but one means of Federal
acquisition of legislative jurisdiction - - by State Consent under Article 1, § 8,
cl. 17 .... Justice Mclean suggested that the Constitution provided the sole mode
for transfer of jurisdiction, and that if this mode is not pursed, no transfer

27.

of jurisdiction can take place," Id., at 41.

"It scarcely need to be said that unless there has been a transfer of juris-
diction (1) pursuant to clause 17 by a Federal acquisition of land with State con-
sent, or (2) by cession from the State to the Federal Government, or unless the Fe-
deral Government has reserved jurisdiction upon the admission of the State, the
Federal Government possess no legislative jurisdiction over any area within a State,
such jurisdiction being for the exercise by the State, subject to non-interference
by the Federal Government with State functions." Id., at 46.

"On the other hand, while the Federal Government has power under various pro-
visions of the Constitution to define, and prohibit as criminal acts or omisssions
occurring anywhere in the United States, it has no power to punish for various other
crimes, jurisdiction over which is retained by the States under our Federal-State
system of government, unless such crime occurs on areas as to which legislative
jurisdiction has been vested in the Federal Government," Id., at 107 [underscore
added]

This matter of Congress' ability to punish crimes was addressed
by Thomas Jefferson by way of the "Kentucky Resolutions" in response
to the Alien and Sedition Acts in (c. 1798). The second of nine reso-
lutions addressed the matter of United States authority to punish
crimes:

2. Resolved, That the Constitution of the United States, having dele-
gated to Congress a power to punish treason, counterfeiting the securities and current
coin of the United States, piracies, and felonies committed on the high seas, and
offenses against the laws of nations, and no other crimes whatsoever. [underscore
added]

Again, Congress' ability to regulate, define, and/or punish
activity within the several States is "strictly prohibited," therefore,
to keep with Constitutional mandates, it's current legislation must
of necessity be via Article IV, § 3, cl. 2. It scarcely need be said,
that a legislative court with territorial jurisdiction, is "incapable
of receiving" Art. III judicial power, American Insurance Co. v. Canter,
supra.

In <u>National Mut. Ins. Co. v. Tidewater Transfer Co</u>., 337 US
582, 69 S. Ct. 1173, Chief Justice Vinson, in his dissenting
opinion, stated:
                " If Congress creates a judicial body to implement another
of its constitutional powers, that body is a legislative court and may not
excercise none of the judicial power of Art. III. We have held that the answer to
the question whether a court is of one kind or another "lies in the power under
which the court was created and in the jurisdiction conferred." <u>Ex parte Bake-</u>
<u>lite Corp</u>., 279 US at pp. 459, 73 L.Ed 789, 49 S. Ct. 416.

We now turn to citizenship, to remove any presumed inference
of subject obligation. <u>Ex parte Knowles</u>, 5 Cal. 300 (c. 1855), held:

"A citizen of any one of the States of the Union, is held to be, and
called a citizen of the United States, although technically and abstractly there
is no such thing. To conceive a citizen of the United States who is not a citi-
zen of some one of the States, is totally foreign to the idea, and inconsistent
with the proper construction and common understanding of the expression as used
in the Constitution, which must be deduced from its various other provisions."

... If we examine the language closely, and according to the rules of rigid
construction always applicable to delegated powers, we will find that the power
to <u>naturalize</u> <u>in</u> <u>fact</u> <u>is</u> <u>not</u> given to Congress, but simply the power to establish
an uniform rule.

Where the State Citizen, identified in the Preamble of the
Constitution of the United States, and in 1:2:2, 1:3:3, 3:2:1, and
4:2:1 of that instrument, is a Sovereign or Principal, the Four-
teenth Amendment citizen of the United States belongs to a subject,
or subordinate class, as demonstrated by § 1 of that Amendment.
Also See, <u>United States v. Cruikshank</u>, 95 US 542 (c. 1875). The
privilege and immunities clause, Art. IV, § 2, cl. 1, it turn descri-
bes a different class of citizen:

Section. 2. The Citizens of each <u>State</u>, shall be entitled to all privili-
ges and immunities of <u>Citizens</u> in the <u>several</u> <u>States</u>.

This distinction in Citizenship is <u>critical</u>. First, here, at 4:2:1, we find "State" and <u>several</u> State, the object of which has been clearly ascertained and defined, supra. Secondly, this subordinate class as referenced by the grant of <u>only</u> privilege and immunity, is completely inconsistent with <u>Sovereign People</u>. The absolute Rights of the People are not those given by cession from the King but independently asserted and preserved, not waived. In Federalist No. 84, (May 28, Anno domini 1788, Hamilton, states:

"Such was Magna Charta, obtained by the Barons, sword in hand, from king john. Such were the subsequent confirmations of that charter by subsequent princes." .... "Here, in strictness, the <u>people surrender nothing</u>, and as they retain everything, they have no need of particular reservations."

"We the People of the United States, to secure the blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution ..."

Further authority confirms the subordinate class of Fourteenth Amendment citizenship:

"The word "citizen" as used in privileges and immunities clause of Art. IV, § 2, cl. 1, <u>must</u> be given the same meaning as that given to "citizens" in this clause. [underscore added][XIV Amendment] <u>Anderson v. Scholes</u>, 83 F. Supp. 681, 12 Alaska 295 (c. 1949).

In <u>Austin v. United States</u>, D.C.Ill. 40 F. Supp. 777 (c. 1941), (held "Citizens", within this amendment, mean those who are entitled, upon <u>terms prescribed</u> by institutions of the state, to all rights and privileges, conferred by those institutions upon the highest class of society, and, to be a "citizen", it is necessary that one should be entitled to enjoyment of those <u>privileges</u> and immunities upon the same terms upon which they are conferred upon other citizens.")[underscore added] This subject citizenship is the same extended to subordinate citizens in territories of the United States.

In <u>Murphy v. Ramsey</u>, Utah (c. 1885), 114 US 44, 29 L.Ed 47,
5 S. Ct. 747, held:

> "The personal and civil rights of the inhabitants of
territories are secured to them, as to other citizens, by the principles of
constitutional liberty which restrain all the agencies of government, state and
national; their political rights are <u>franchises</u> which they hold as <u>privileges</u>
in the legislative <u>discretion</u> of the Congress of the United States." [underscore
added] Also See, <u>Filipino Am. Veterans and Dependents Ass'n v. U.S.</u>, D.C. Cal.
(c. 1974), 391 F.Supp. 1314.

As noted above, the rights and privileges granted to geo-
graphical citizens is at the discretion of the [P]arty granting
the exercise thereof; and in that same discretion, those rights or
tangible securities can be taken away. These grants of privileges
are completely diverse from "absolute rights" of a sovereign People.
It is conclusive that Fourteenth Amendment citizenship is a geogra-
phical citizenship, and the regulation, provisions, and privileges
extended are pursuant the plenary power of Congress, Art. IV, § 3, cl.
2.

In Ballentines Law Dictionary, third edition, we find United
States citizen defined:

> "The <u>antithesis</u> of alien. A person born or natura-
lized in the United States and subject to the jurisdiction thereof. US Const.
Art. 14, cl. 1. One who by birth, naturalization, or other means is a member of the
<u>independent</u> political society of the <u>United States of America</u>. [underscore added]

The above referenced definitions are fatal and irrefutable.
This independent political society is further articulated at § 101,
66 Stat. 166, codified at 8 U.S.C. § 1101(22):

(22) The term "national of the United States" means (A) a citizen of the
United States ...

At 8 U.S.C. § 1101(23), we find the term "naturalization"

31.

defined:

       (23) The term "naturalization" means the conferring of nationality of a <u>state</u> upon a person after birth, by any means whatsoever.

This meaning is in strict conformity with the clear intentions of the framers, and ratifyer's of the Constitution. In Federalist No. 42 (January 22, Anno domini 1788), Madison, states:

" ... so that it may be in the Power of a particular State, or rather every State is laid under a necessity, not only to confer rights of citizenship in other States upon any whom it may admit to such rights within itself; but upon any whom it may allow to become inhabitants ..."

"The very improper <u>power</u> would <u>still</u> be <u>retained</u> by each <u>State</u>, of <u>natu-ralizing</u> aliens in every other State.

At the outset it <u>must</u> be conceded that the United States is not a State within the meaning of the Constitution. However, this class of this <u>citizen</u> as defined in 8 U.S.C. § 1101(22), is put to rest at 8 U.S.C. § 1101 (36)(38), ch. 12:

       (36) The term "State" includes the District of Columbia, Puerto Rico, Guam, and the Virgin Islands of the United States.

       (38) The term "United States", except as otherwise specifically herein provided, when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States.

The citizen of the United States (a/k/a geographical citizen), was distinct from the State Citizen, at Art. III, § 2, cl. 1, among other places, or there would not have been any need to restate "due process" rights already articulated in the Fifth Article of Amendment. This difference in citizenship is further noted in <u>Hepburn and Dundas v. Ellzey</u>, 2 Cranch 445, 2 L.Ed. 332, where Chief Justice Marshall stated:

       "It is true that as citizens of the United States, and of that particular district which is subject to the jurisdiction of congress, it is

extraordinary that the courts of the United States, which are open to aliens, and to the <u>citizens</u> of <u>every state</u> in the <u>union</u>, should be closed upon them."

This citizen of the United States is conclusively <u>not</u> a citizen of anyone of the several States in the Union. In other words, being a "citizen of the United States," as created in Sec. 1 of the 14th Amendment, and a "citizen" of the seveal State of Maryland, is irrelevant where the Code is concerned. In order for "citizen of the United States" status to make any difference, the status <u>must</u> be determined by virtue of citizenship in the District of Columbia, Puerto Rico, Guam, American Samoa, or the Virgin Islands of the United States. It is a <u>municipal</u> <u>geographically</u> specific citizenship, <u>not</u> a universal citizenship throughout the several States. Petitioner asserts that he is <u>not</u> a geographical citizen of this independent political society United States of America, but a Citizen of the sovereign several State of Maryland, an original party to the Constitution, this citizenship is enumerated at Art. III, § 2, cl. 1 of that instrument.

We now turn to the Constitutionally and statutorily authorized principal of interest, that must therefore be the prosecuting party via lawful courts of the United States, supra. The United States (c. March 4, Anno domini 1789), as enumerated by Constitutional authority, Art I, § 8, cl. 18, is the authorized principal of interest in prosecuting title claims and/or crimes for offences against the United States, <u>not</u> the <u>United</u> <u>States</u> <u>of</u> <u>America</u>. This authorized authority is easily traced. In consulting the (c. 1934) edition of the United States Code, authority of the "United States" is verified for actions to enforce forfeitures, etc. At 28 U.S.C. § 732, 1934 ed., reads as follows:

§ 732. Suits for duties, imposts, taxes, penalties, or forfeitures. All suits for the recovery of any duties, imposts, or taxes, or for the enforcement of any penalty or forfeiture provided by any act respecting imposts or tonnage, or the registering and recording or enrolling and licensing of vessels, or internal revenue, or direct taxes, and all suits arising under postal laws, shall be brought in the name of the United States. [underscore added]

The origin of 28 U.S.C. § 732, 1934 ed., is § 919 of the Revised Statutes of (c. 1878). The 1934 U.S.C. section duplicates § 919 of the Revised Statutes of 1878, the R.S. of 1878 providing the demarcation point for current law of the United States. Annotation to § 919 cite original legislation as follows: Act of 4 Aug., 1790, c. 35, s. 67, v. 1, p. 176. 31 Dec. 1792, c. 22, s. 89, v. 1, pp. 695, 696. 13 July, 1866, c. 184, s. 9, v. 14, pp. 111, 145. 8 June, 1872, c. 335, s. 303, v. 17, p. 323. Additionally, the Supreme Court of the United States has determined authority of the "United States" to sue in the absence of statutory authority specifying the principal. Suit must of necessity be brought in the name and by the authority of the United States. United States v. San Jacinto Tin Co., 125 US 273 (c. 1888); United States v. Beebe, 127 US 338 (c. 1888); United States v. Bell Telephone Co., 128 US 315 (c. 1888). Again resting the matter at § 9, 1 Stat. 76, § 11, 1 Stat. 78, and § 27, 1 Stat. 87. Nowhere is there Constitutional or statutory authority for the "United States of America" to serve as principal of interest in civil or criminal causes for the benefit of the United States inside the several States party to the Constitution. Moreover, this "United States of America" and the United States, are distinct, separate entities.

At Sec. 80 of Title 18, (c. Anno domini 1934 ed.), of the Code, section 35 (amended), states in pertinent parts:

34.

" or any naval service of the United States," ... (in the same section and statute we find),

"or any corporation in which the <u>United States of America</u> is a Stock Holder." [underscore added]

Petitioner asserts, that where the "United States" and the <u>United States of America</u> are specifically mentioned in the same section and statute, one is distinguished from the other. See, R.S. § 5348; May 30, Anno domini 1908, c. 235, 35 Stat. 555; March 4, 1909, c. 321, § 35, 35 Stat. 1095; October 23, 1918, c. 194, 40 Stat. 1015; c. 587, 48 Stat. 996. Clearer distinctions are to be found at, 28 CFR, Parts 0.96 & 0.96b. To conclusively demonstrate distinction between the (two) entities, we consult the following Historical Notes of § 1001, in the current Title 18, which states:

"Words "or any corporation in which the <u>United States of America</u> is a stockholder," in section § 80 [c. 1940 ed. U.S.C.], Were omitted as <u>unnecessary</u> in view of the definition "agency" in § 6 of this title." [underscore added]

At 18 U.S.C. § 6, we find agency defined:

As used in this title:

The term "agency" includes any department, <u>independent establishment</u>, commission, administration, authority, board or bureau of the United States ...[ underscore added]

At the outset, it should be remembered that the definition of United States at 18 U.S.C. § 5, supra, is controlling; (sic) this United States of America, is an independent establishment and/or society, Ballentines Law Dictionary, supra. Therefore, this particular "United States of America" is an agency of the lawful "United States", supra - - it is a creation, instrumentality, and/or political subdivision of the United States. In the current edition of Title 28, § 3611, 104 Stat. 4933, codified at 28 U.S.C. § 3002(15)(A)(B)(C),

Debt Collection, Chapter 176, states:

> (15) "United States" means —
>
>> (A) a Federal corporation;
>>
>> (B) an agency, department, commission, board, or other entity of the United States; or
>>
>> (C) an instrumentality of the United States.

Agreeably, this United States of America, is _not_ the original United States of America established in the Articles of Confederation (c. Anno domini 1777). Accordingly, [i]t is a new creation, as there is no mention of the United States of America in § 5348 of the Revised Statutes of 1878. The Revised sections were based on original Civil war legislation, Act 1 March, Anno domini 1863, c. 67, ss. 1, 3, v. 12 pp. 696, 698. The 1878 revision was preserved in the Act of March 4, 1909, § 35, 35 Stat. 1095, supra, with no mention of [t]his particular United States of America; therefore, it is a Twentieth Century creation, a political alliance, possession, [existing] under Congress' Art IV, § 3, cl. 2 legislation. Again, the limited application of this private [l]aw is held to territories of the United States. See, 28 U.S.C. § 132, supra, and 18 U.S.C. § 23. This territorial legislation has been conferred on the United States District Courts, [already discussed, supra] and in National Mut. Ins. Co. v. Tidewater Transfer Co., supra, this fact is revealed in the opinion by Justice Jackson:

> "It has deliberately chosen the district courts as the appropriate instrumentality through which to exercise part of the judicial functions ..."

In no matter should we pay more deference to the opinions of Congress than in its choice of instrumentalities to perform a function that is within its power.

Its own carefully considered view that it has the power and that it is necessary and proper to utilize United States District Courts as a means to this end ...

36.

The authority to confer rules upon these territorial courts is vested in the Supreme Court. See, § 2 of the Act of June 19, Anno domini 1934, 48 Stat. 1064, as amended on Dec. 29, 1948, codified at 28 U.S.C. § 2072(a). This power is not conferred upon the Supreme Court under its original Article III Constitutional authority, but by Congress' Art. IV, § 3, cl. 2, legislative power. United States v. Hudson, 7 Cranch 32, 33, L.Ed. 259.; H.R.Rep. No. 669, 72d Cong., 1st Sess. 12-14. However, the Supreme Court may not prescribe rules for the "district courts of the United States," (a court of competent jurisdiction).

A glimpse at F.R.Cr.P., Rule 54(a) and Federal Rules of Civil Procedure, hereinafter (F.R.Cv.P.), Rule 1, we find limited application of the laws and rules, the subject of territorial confines. This picture takes even better shape via the Director of Bureau of Prisons: The delegation order at 28 CFR, Part 0.96, 0.96b, supra, authorizes the Director to take custody of people accused or convicted of offences against the "United States"; the delegation order at 28 CFR, 0.96b authorizes the Director to take custody of offenders from the United States of America under provisions specified in a treaty authorized by Public Law 95-144. The Director acts as agent for the United States in this transfer process:

§ 0.96 Delegations

The Director of the Bureau of Prisons is authorized to exercise any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons ( including delinquents) charged with or convicted of offenses against the United States ...

§ 0.96b Exchange of prisoners.

The Director of the Bureau of Prisons and officers of the Bureau of Prisons designated by him are authorized to receive custody of offenders and to transfer offenders to and from the <u>United States of America</u> under a treaty as referred to in Public Law 95-144; to make arrangements with the States and to receive offenders from the States for transfer to a foreign country; to act as agent of the <u>United States</u> ... [underscore added]

The term "State" used in 28 CFR, Part 0.96b <u>must</u> conform to application of the term "State" prescribed in Rule 54(c), F.R.Cr.P, per authority of 28 U.S.C. § 2072(b), [et sic], these regulations are applicable to the Federal States (Puerto Rico, Guam, etc., exclusive of the Union of several States.

The above demonstrates that (1) the United States [distinct] from the United States of America, and (2) the United States of America is a geographical jurisdiction distinct, foreign and separate from the United States jurisdiction. With this fact concluded, the Supreme Court has stipulated that an Act of Congress defined, supra, is locally applicable in the District of Columbia, Puerto Rico, or in a territory or an insular possession, the term "Act of Congress" used in 18 U.S.C. § 4001, <u>must</u> comply with the application prescribed in 28 U.S.C. § 2072(b), or it is repealed. Therefore, current authority for the Attorney General to imprison, is applicable only in territories belonging to the United States. §§ 1, 4, 26 Stat. 839, § 6, 46 Stat. 326, codified at 18 U.S.C. § 4001(a):

§ 4001. Limitation on detention; control of prisons

(a) No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an <u>Act of Congress</u>. [underscore added]

We now turn to the Code, that we may ascertain its purpose. The Code clearly exceeds enumerated powers delegated to the United States

by the Constitution. Therefore, we <u>must</u> conclude that portions of the Code do not apply in the several States and to the sovereign Citizens thereof.

With the Constitutional context in place, let us turn to elements of the Code itself. The first stop is at § 7806 of Title 26, which specifies construction of the title designated as the Internal Revenue Code:

> Sec. 7806. Construction of title.
>
> (a) Cross references.
>
> The cross reference in this title to other portions of the title, or other provisions of law, where the word "see" is used, are made only for convenience, and shall be given no legal effect.
>
> (b) Arrangements and classification.
>
> No inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title, nor shall any table of contents, table of cross references, or similar outline, analysis, or descriptive matter relating to the contents of this title be given <u>any</u> <u>legal</u> <u>effect</u>.

The central point for purposes here is that <u>no</u> implication of legislative construction can be drawn or derived from placement of anthing in the title. [T]hey respectively, are absent any implication of legislative construction - - something more <u>must</u> be added to determine application, obligation, authority, etc. <u>Murrell v. Western Union Tel. Co.</u>, supra. Therefore, the sections of this title, or any other with this fatal defect, vest no franchise of authority, or impose an obligation or penalty on anyone. At Titles 18 & 28, of the Criminal and Judicial Codes, we in fact find, the same disclaimer of legislative construction. See, § 19 of Title 18, U.S.C. c. 645, 62 Stat. 683, and § 33 of Title 28, U.S.C., c. 646, 62 Stat. 991.

Essentially the same disclaimer appears in enacting legisla-
tion for all titles which are classified as **"prima facie"** the law,
and those enacted as positive law, the latter constituting "legal
evidence" of the law. However, sections 19 of Title 18, and § 33 of
Title 28, supra, [the original acts] remain in full force and effect.
Any given section of the Code isn't particularly unique so far as
being evidential. No section in and of itself has any conclusive
authority. If we compare the authority established in <u>Little and
Brown's</u>, found at Title 1, § 113, to the Code, the pattern emerges as
follows:

> The edition of the laws and treaties of the United States,
> published by Little and Brown, and the publication in slip or pamphlet form of the
> laws of the United States issued under the authority of the Archivist of the United
> States, and the Treaties and Other International Acts Series issued under the
> authority of the Secretary of State shall be <u>competent</u> <u>evidence</u> of the several pu-
> blic and private Acts of Congress .... without <u>any</u> further proof or authentica-
> tion thereof. [underscore added]

In comparing the United States Code at Title 1, U.S.C. § 204, the
evidence is conclusive and fatal. The substance and quality of evi-
dence of the Little and Brown publication is significantly different
than the Code, and in general, application is different. In no in-
stance has Congress sought to give weight to the titles of the Code
as "competent evidence." It is of particular importance to be in-
formed that, 1 U.S.C. § 30a, (c. 1934 ed.), is based on § 908 of the
Revised Statutes of (c. Anno domini 1878.) The little and Brown publi-
cation of what amount to congressional session law, has been desig-
nated as (stand-alone) <u>competent</u> <u>evidence</u> of the laws of the United
States before the Code was procured. The authenticity of the Little
and Brown publication remains as it has been since the last century.

By contrast, the nature of the Code is reflected in § 54 of
Title 1, 1934 ed:

§ 54. Codes and Supplements as establishing prima facie
the Laws of the United States and District; citation of Codes and Supplements.
In all courts, tribunals and public offices of the United States, at home or
abroad, of the District of Columbia, and of each State, Territory, or insular
possession of the United States - -

Nowhere, in the section above, is the weight of competent
evidence given to the Code, nor is the jurisdiction of the Code
extended into the several States, as is noticed in §30a of the
1934 ed., (Little and Brown's publication) supra. Legislative construc-
tion determines application, in some identifies source of authority,
etc. Any given section in the United States Code is separated from
its title, enacting clause, and other essentials necessary to de-
termine application. It is simply a statement of the statute law,
not the Laws of the United States evidenced in Little and Brown's
publication.

The Constitutional and statutory mandates of "due process" are
without question. United States v. Hooker, 841 F.2d 1225 (4th Cir.
c. 1988); Also See, Stirone v. United States, 361 US 212, 4 L.Ed 2d
252, 80 S. Ct. 270 (c. 1960). An indictment or bill charging certain
statutes must detail every necessary element of the crime charged
to comply with due process requirements; and with the Code dis-
claiming legislative construction, coupled with the fact that re-
course must of necessity be had to the original statutes themsel-
ves, the application of the Code (as to Petitioner), violates due
process. See, United States v. Carll, 105 US 611, 612, 26 L.Ed. 1135
(c. 1882) ( held " In an indictment upon a statute, it is not suffi-

cient to set forth the offense in words of the statute, unless those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the <u>elements</u> necessary to constitute the offense intended to be punished.")[underscore added]

The indictment [JFM-93-0419] asserted against Petitioner, was procured by Respondent, caption bearing: UNITED STATES OF AMERICA versus COREY LORENZO WOODFOLK, IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND, absent required elements to comport with due process, inter alia, and did so divest the United States District Court for Maryland of subject matter jurisdiction.

## Petitioner's Fifth, Sixth, and Thirteenth Amendment Rights were violated where Respondent used several unpromulgated regulatory statutes to obtain a convicton against Petitioner

### Claim II

Petitioner claims and asserts, that upon review by this Honorable Court of all relevant evidentiary records and other pertinent material of fact, it will <u>unequivocally</u> find that Respondent, used unpromulgated commercial regulatory statues in sustaining Petitioner's conviction, (i.e., 84 Stat. 1260, and 84 Stat. 1265) codified at 21 U.S.C. § 841(a) and § 846, supra.

The Administrative Procedures Act, ch. 324, 80 Stat. 379, codified at 5 U.S.C. § 552, 88 Stat. 1561, amending same, and the Federal Register Act, 49 Stat. 500, ch. 417, § 5(a)(3), codified at 44 U.S.C. § 1505(a)(3), provide the means for determining what statutes in any given Act of Congress are applicable where. If a statute has general

application, then the agency head responsible for carrying out whatever duties the statute prescribes is required to promulgate regulations disclosing all pertinent elements of said regulation, and have it published in the Federal Register. This mandate comports with due process requirements as to inform any whom the statute and regulation thereof may tend to adversely affect. See, Cervase v. Office of Federal Register, 580 F.2d 1166 (3rd Cir. c. 1978). At 44 U.S.C. § 1505, we find for authority:

§ 1505. Documents to be published in the Federal Register.

(a) Proclamations and Executive Orders; documents having general applicability and legal effect: documents required to be published by Congress.

There shall be published in the Federal Register - -

(1) Presidential proclamations and Executive Orders, except those not having general applicability and legal effect or effective only against Federal agencies or persons in their capacity as officers, or employees thereof;

(2) documents or classes of documents that the President may determine from time to time have general applicability and legal effect; and

(3) documents or classes of documents that may be required so to be published by Act of Congress.

For the purposes of this chapter [44 U.S.C. §§ 1501 et seq.] every document or order which prescribes a penalty has general applicability and legal effect. [underscore and bracket added]

At 44 U.S.C. § 1507, the provision is made that, "The contents of the Federal Register shall be judicially noticed ...", and at § 1510, which establishes the Code of Federal Regulations, it provides at subsection (e) that, "The codified documents [in the Code of Federal regulations] of the several agencies published in the supplemental edition of the Federal Register ... shall be prima facie of

43.

the text of the documents and of the fact that they are in effect on and after date of <u>publication</u>."

Petitioner asserts that the indictment alleged against him, supra, was for violating 21 U.S.C. § 841(a) and § 846, supra, which are commercial regulatory statutes. Therefore, this Honorable Court <u>must</u> agree, that the United States District Court for Maryland, has jurisdiction to adjudicate sanctions for "Regulatory Statutes." The fact of such compels the following: (1) Petitioner asserts that <u>no</u> promulgation has ever been made for the subject titles, 21 U.S.C. § 841(a), nor § 846  (2) Petitioner moves this Honorable Court to compel Respondent to produce promulgation for 84 Stat. 1260, and 84 Stat. 1265 codified at 21 U.S.C. § 841(a) and § 846  (3) Petitioner submits that Respondent <u>cannot</u> produce such proof of promulgation because <u>no</u> such proof exist. According to the Archivist of the Office of Federal Register, <u>no</u> promulgation was ever submitted. In consulting the CFR, parallel table of authorities, we find:

   21 U.S.C. § 841, Prohibited Acts A.  (No implementing regulations).
   21 U.S.C. § 846, Attempt or Conspiracy.  (No implementing regulations).

The even more obvious default, coupled with the irrefutable evidence above is, there are <u>no</u> implementing regulations applicable to the Union of several States for treaties and other international agreements pertaining to regulation of controlled substances. The question and anwer is, "Where do these laws apply"? Petitioner asserts <u>only</u> in territories subject to the sovereignty of the United States. The government is duty bound by Congressional acts to comply with regulatory mandates. [T]hey are <u>not</u> at liberty to exercise arbitrary neglect nor disobedience to any Acts of Congress, more so with regu-

lations that have general applicability. In <u>Cervase v. Office of Federal Register</u>, supra, this fact is disclosed:

"Prior to 1935, although federal regulations of general applicability might have affected regulations, they often were not conveniently available to those whom they applied. Consequently, in that year Congress first imposed the requirement that such regulation be published in the Federal Register. The act also provided that a document <u>required</u> to be published would <u>not</u> be <u>valid</u> against any person who lacked <u>actual</u> knowledge thereof. However, <u>publication</u> in the Federal Register was deemed <u>sufficient</u> to give notice to any person subject to or affected by the document."

Codification of a document is prima facie evidence of its continuing legal effect. <u>Publication</u> of the document <u>in</u> the Federal Register <u>makes</u> it <u>effective</u> against all the world. But without the retrieval mechanism provided by an adequate index, a person might never be aware of a document containing a regulation affecting him until some federal bureaucrat produced a copy of the document and attempted to apply it to him.

The <u>basic</u> <u>object</u> of this statutory reform was to <u>eliminate</u> <u>secret</u> <u>law</u>. [underscore added]

If the **"Notice"** <u>mandate</u> of 5 U.S.C. § 552, and 44 U.S.C. § 1505(a) satisfies <u>due</u> <u>process</u> requirements, absent such "Notice" is due process violated? Petitioner asserts in the affirmative. The courts have addressed this issue on several occasions, and has spoken in a loud voice, that agencies of the federal government <u>must</u> publish the enforcement regulations having general legal application in the Federal Register before they can become law. <u>United States v. Reinis</u>, 794 F.2d 506 (9th Cir. c. 1986) (held "Form 4789, however, was never promulgated pursuant to the rule making requirements of the Administrative Procedures Act, 5 U.S.C. § 553. ... Consequently Form 4789 is not effective as a regulation. ... Criminal penalties for failure to report currency transactions can attach <u>only</u> upon violation of regulations promulgated by the Secretary. ...") Therefore, Petitioner's

conviction <u>must</u> be vacated with prejudice, because he cannot be
prosecuted or stand convicted for violating any acts pursuant to ,
21 U.S.C. §§ 841(a), 846, unless he violates an implementing regula-
tion, duly promulgated, in the context of a criminal statute. This
omission of itself divested [t]he Court of subject matter jurisdic-
tion. <u>American Fire & Casualty Co. v. Finn</u>, 341 US 6, 17-18, 71 S. Ct.
534, 95 L.Ed 701, (c. 1951). The rule of strict construction <u>must</u> be
applied under [a] statute. <u>Porter v. Prudential Ins. Co.</u>, 470 F.Supp.
203, (D.C. Tex. c. 1979) (held "It is well settled that "[t]he rule-
making power granted to an administrative agency charged with the ad-
ministration of a federal statute is not the power to make law. Ra-
ther, it is '"the power to adopt regulations to carry into effect the
will of Congress as expressed by the statute." ' " <u>Ernst & Ernst v.</u>,
<u>Hochfelder</u>, 425 US 185, 213-14, 96 S. Ct. 1375, (c. 1976). In order to
be <u>valid</u>, regulations must "be consistent with the statute under
which they are <u>promulgated</u>." Petitioner, asserts Respondent has not
provided the required promulgation, nor submitted it for publication
in the Federal Register, pursuant to law. The parallel tables of au-
thority, CFR, further evidence, that <u>no</u> other agency has been given
authority to use, 21 U.S.C. §§ 841(a), 846, as their authority to pro-
secute. Thus, now the question is whether Respondent, can use [t]his
regulatory statute that was <u>not</u> promulgated as mandated by, 80 Stat.
379; 49 Stat. 500; Executive Order 11030, and 84 Stat. 1245, codifica-
tions at 21 U.S.C. §§ 841(a), 846 and 21 U.S.C. § 811 ? The conclusion to
this matter is fatal. Regulation of any given statute that has general
legal effect, <u>must</u> be published in the Federal Register, and therein
comply with the Administrative Procedures Act, absent such, the
omission is inescapable. See, <u>Hatch v.</u>

United States, 212 F.2d 280 (c. 1954) All aforementioned cases
specifically state, that the agencies must publish implementing
regulations in the Federal Register, or it is of no effect. Again,
the rule of strict construction as to 5 U.S.C. § 552, and 44 U.S.C. §
1505(a), supra, must be applied. United States v. Halseth, 342 US 277,
280, 96 L.Ed 308, 311, 72 S. Ct. 275 (c. 1952); United States v.
Wiltberger (US) 5 Wheat 76, 95, 96, 5 L.Ed 42, 43 (c. 1820). In
United States v. Mersky et al., 361 US 431, 4 L.Ed. 2d 423, 80 S.
Ct. 459, the court held ( " Once promulgated, these regulations, called
for by the statute itself, have the force of law, and violations
thereof incur criminal prosecutions, just as if all the details had
been incorporated into the congressional language. The result is that
neither the statute nor the regulations are complete without the
other, and only together do they have any force.") If regulations
are not published in the Federal Register, application of any given
statute is exclusively held to agencies of the United States, offi-
cers or employees of the federal government. Petitioner asserts, that
he is neither. The necessity for implementing regulations of a sta-
tute with general legal effect, to be published in the Federal Re-
gister is clear;  for similar views See, California Bankers Assoc. v.
Schultz, 416 US 21, 26, 94 S. Ct. 1500, 39 L.Ed. 2d 812, holding in
the opinion, delivered by Chief Justice Rehnquist, ( "Because it has
a bearing on our treatment of some of the issues raised by the par-
ties, we think it important to note that the Act's civil or crimi-
nal penalties attach only upon violation of regulations promulgated
by the Secretary;  if the Secretary were to do nothing, the Act itself

47.

would impose <u>no</u> penalties on <u>anyone</u>.") [underscore added]

The message of the Supreme Court and others is crystal clear. If Petitioner were to borrow the words of Justice Cardoza, stating: "The constable has erred; the prisoner must go free." This of it- itself would omit the cause; (i.e., "the constable has sought to defy the law, the [prisoner] was always free.")

> **Petitioner's Fifth, Sixth, Seventh, and Ninth Amendment Constitutional Rights were violated where Congress exceeded its Constitutionally enumerated exercise of power therein Art. IV, § 3, cl. 1, by erecting it's political subdivision and/or agency into the jurisdiction of the sovereign several State of Maryland**

## Claim III

The Tenth Article of Amendment to the Constitution is of parti- cular importance since it prohibits the government from exercising power not specifically conferred to it, and enumerated in the Con- stitution; often called interposition. This demarcation frames the Separation of Powers doctrine - - State and Federal governments are postured as the antipodes or opposite ends of authority, with one operating inside the scope of its enumerated powers; while the other operates in the scope of its enumerated and limited powers. Addition- ally, the Separation of Powers Doctrine distinguishes responsibi- lity of the three branches of government, having two Houses of legis- lation, often called bicameral. See, <u>Springer et al. v. Government of the Philippines Islands</u>, 48 S. Ct. 480, 277 US 189 (c. 1928) at 201 & 202. The first essential authority where matters at hand are

concerned, beyond the constitutionally-enumerated power, is stautory authority. The Constitution itself merely established the branches and authorizes authority each may exercise. At Art. 1, § 8, cl. 18 of the Constitution, specification is given to Congress that, "[The Congress shall have Power] To make all Laws which shall be necessary and proper ..." Through this lawmaking authority, Congress may activate and enact all, some or none of any given power enumerated in the Constitution. This includes creating offices and/or agencies, subdivisions, etc. However, one of the more statutory restrictions which secures and reinforces the Constitutional limitation, Art. IV, § 8, cl. 17, as to Congress' authority is at ( c. 389, 61 Stat. 643, codified at 4 U.S.C. §§ 71 & 72. The first of these sections, 71, establishes territory within the current borders of the District of Columbia as the seat of the government for the United States; the second, 73, prohibits any government department from operating outside the District of Columbia save as Congress authorizes by statute. In this context, we see what should be lawful constraint on its agency, <u>United States of America</u>.

It appears from conclusive facts, that governments of the several States are working through corporate structures, and via municipal corporations, See, the Act of September 21, Anno domini 1871, are "acting" as though each is an instrumentality or political subdivision of the United States. This fraud is perpetrated by State legislatures adopting uniform acts, nearly all of which presume the adopting States are instrumentalities of the United States. Fortunately, at Article IV, § 3, cl. 1, the Constitution condemns this act:

New States may be admitted by the Congress into this Union; but no

new State shall be formed or erected within the jurisdiction of any other State ...

Once Congress admits a new State to the Union, no party, including Congress, has authority to create another State, (i.e., United States of America) within the Jurisdiction of the existing State, (i.e., Maryland). Suffice it to say that the several State of Maryland has not been admitted to the Union as newer States, as [she] is an original party to the Constitution. Therefore, the so-called de-facto State — United States of America, which functions as a Federal State, non-existing and operates as a completely de facto entity. It has no lawful right to exercise of authority in the several State State of Maryland. Moreover, chief executive officers and legislatures of the several State of Maryland has no authority to create new States. See, <u>Downes v. Bidwell</u>, 182 US 244, 45 L.Ed. 1088, 89 S. Ct. 770 (c. 1901).

One of the grand paradoxes set up by Congress, was its move to exercise its Art. IV, plenary power respecting property or possessions belonging to the United States. The Separation of Powers Doctrine comes into focus here: Congress has no authority to delegate legislative power to administrative and judicial branches of government. However, this authority may be delegated via Art. IV, § 3, cl. 2, making all rules and regulations respecting property of the United States. This assumption of proper authority for (unconstitutional) purpose is thus exposed: It we are to assume that the 14th Amendment citizen is subject to the geographical exercise of Congress plenary, (Art. IV); this object amounts to institutionalized tyranny and involuntary servitute at the least. But of this despotism, fine [e]yes saw its purpose;

At Federalist No. 84 ( May 28, Anno domini 1788) Hamilton, states:

"The establishment of the <u>writ of habeas corpus</u>, the prohibition of ex post facto laws, and of Titles of Nobility, to which we have no corresponding provisions in our constitution, are perhaps greater securities to liberty and republicanism than <u>any</u> it contains. The creation of crimes after the fact, or in other words, the subjecting of men to punishment for things which, when they were done, were breaches of no law, and the practice of arbitrary imprisonments have been in all ages the favourite and most formidable instruments of tyranny. ... To bereave a man of life (says he) or by violence to confiscate his estate, without accusation or trial, would be so gross and notorious an act of despotism, as must at once convey the alarm of tyranny throughout the whole nation; but confinement of the person by secretly hurrying him to gaol, wher his sufferings are unknown or forgotten, is a less public, a less striking, and therefore a more dangerous engine of arbitrary government. ..."

And as a remedy for this <u>fatal evil</u>, he is every where peculiarly emphatical in his encomiums on the <u>habeas corpus act</u>, ... [ underscore added]

Needless to say, Congress has a Constitutional duty to legislate for the Union of several States, and to ensure the obligations of that social [c]ompact, endeavored, and maintained. It is not the purpose that Congress should arbitrarily elect in/and of itself to primarily legislate outside the Constitutional limitations per Art. IV, § 3, cl. 2; so as to thwart the Separation of Powers doctrine with providing a means for its agency (United States of America) to be erected as a Federal State. <u>Act for Admission of West Virginia into Union</u>, (c. 1862, 10 Op. Atty.Gen. 427.) (held "Congress may admit new states into this Union, but cannot form states; Congress has no creative power in that respect, and cannot admit in this Union any territory, district, or other political entity less than a state, and such state must exist, as a separate independent body politic, before it can be

51.

admitted under this clause, and there is no other clause.")

This capricious misuse of Constitutional authority is as destructive, as it is impolitic. Congress has no creative power to first, create a federal state, (i.e., United States of America), primarily legislate for its benefit, (i.e., The Code of the Laws of the United States of America), then compel the obligations of its fraud upon Petitioner, [w]ho is a citizen of the sovereign several State of Maryland, supra. Coyle v. Smith, Okl. 1911, 31 S. Ct. 688, 221 US 559, 55 L.Ed. 853. (held "When a new state is admitted into the Union, it is sovereign with all of the powers of sovereignty and jurisdiction which pertain to the original states, and that such powers may not be constitutionally diminished, impaired or shorn away by any conditions, compacts or stipulations embraced in the act under which the new state came into the Union ...") The Constitution of the United States grants authority for the United States (c. 1789) to establish nothing more than forts, magazines, arsenals, dockyards and other needful buildings within the several States. Art. 1, § 8,cl. 17. The United States (federal government) cannot exercise any authority within the several States which is not specifically enumerated in Art. I of the Constitution; and officers of the several States cannot accommodate any United States exercise of power which is not specifically delegated under Art. I, without first securing a Constitutional Amendment. New York v. United States et al., 505 US ___, 120 L.Ed. 2d 120, 112 S. Ct. 2408 (c. 1992)

Still, regardless of the tenth Amendment and the Separation of Powers issues, any given Act of Congress, under United States judicial authority, applies only to the extent of the Act and attending

regulations, with territorial limits prescribed at § 2 of the
Act of June 30, 1926, supra, 18 U.S.C. § 7(3), and 4 U.S.C. § 110
(d)(e). See, Caha v. United States, 152 US 211, 14 S. Ct. 513 (c.
1894); American Banana Company v. United Fruit Company, 213 US 347, 29
S. Ct. 511 (c. 1909). In Foley Brothers v. Filardo, 336 US 281 (c.
1949), the Court stated: ("It is a well established principle of
law that all federal legislation applies only within the territorial
jurisdiction of the United States unles a contrary intent appears.")

The power of Congress to admit new states is not power to admit
political organizations which are unequal in power and dignity. In re
Los Angeles Lumber Products Co., D.C.Cal. (c. 1942), 45 F.Supp. 77,
49 Am. Bankr.Rep.N.S. 650.

Through the 1930's, evolution of the corporate United States,
under Congress' alleged Article IV legislative jurisdiction in the
federal zone (i.e., the geographical/self-interested United States of
America), was referred to as corporatism. Presently, the Supreme Court
of the United States and various other courts, use the term cooper-
ative federalism, to refer to the de facto arrangement between the
United States of America, and the governments of the several States,
the latter operating under the "presumption" that they are federal
States, rather than independent republics. This diabolical scheme,
from control of production and distribution of goods and services, to
the mathematically impossible social welfare system and criminal en-
forcement, is premised on the notion that all activity is commercial
in nature. The effect has been to treat the entire nation as a seam-
less garment, which is under Congress' Art. IV, exclusive legisla-
tive jurisdiction, rather than as a patchwork of fifty independent

republics which are subject only to Congress' Art. I, delegated Constitutional authority.

Petitioner asserts that he has a Fourth Amendment Constitutional Right not to be subject to arbitrary government. 1 Stat. 97. Because Petitioner was intentionally by the fraudulent concealment of material facts, never made aware that he had in fact been prosecuted by an independent political society and/or subdivision, agency, (i.e., United States of America), for statement law, (21 U.S.C. §§ 841(a), 846, applicable only in the territorial jurisdiction of the United States, Petitioner was effectively denied his Fifth and Sixth Amendment Constitutional Right to be informed as to the nature and cause of accusation against, to have compulsory process of obtaining witnesses in his favor, not to be held to answer for a capitol, or otherwise infamous crime, absent indictment by grand jury, to have competent Counsel for his defense, nor be deprived of life, liberty, or property without due process of law. That Petitioner has not waived his Seventh Amendment Right to trial by jury at common law, and as much, he was denied this Right by the fraudulent concealment of material facts, undue influence, oppression and unconscionable advantage.

At Federalist No. 28 (December 26, Anno domini 1787) Hamilton, serves Petitioner's claim:

" It may be safely received as an axiom in our political system, that the state governments will in all possible contingencies afford complete security against invasions of the public liberty by national authority."

When will the time arrive, that the federal Government can raise and maintain an army capable of erecting a despotism over a great body of the people of an immense empire ; who are in a situation, through the medium of their state

governments, to take measures for their own defence with all the celerity, re-
gularity and system of independent nations.

Again, at Federalist No. 33 (January 2, Anno domini 1788) Hamil-
ton states:

> "If the Federal Government should overpass the just bounds of
its authority, and make a tyrannical use of its powers, the people whose creature
it is must appeal to the standard they have formed, and take such measures to
redress the injury to the constitution, as the exigency may suggest and prudence
justify."

**Petitioner's Fifth and Sixth Amendment Constitutional
Rights were violated where the Court lacked subject
matter jurisdiction to convict Petitioner to a
Constitutionally defective indictment that lacked
essential elements and that Petitioner is actually
innocent of the offence as charged**

### Claim IV

Petitioner, claims that his conviction as to Count (one) of
[t]he second superseding indictment (JFM-93-0419), should be vaca-
ted with prejudice, in that, the indictment was Constitutionally
defective because it failed charge every necessary ingredient as to
the offence Respondent sought to prosecute.

Suffice it to say, that in order for a bill of indictment to
satisfy due process requirements, it must of necessity include
therein the bill, every element of the charged offence. United
States v. Hooker, 841 F.2d 1225 (4th Cir. 1988) (held "An essential
element of a crime — one that affects substantive rights — one
whose specification ... is necessary to establish the very illega-

lity of the behavior and thus, the Court's jurisdiction.") (
quoting <u>United States v. Cina</u>, 699 F.2d 853 (7th Cir. c. 1983),
cert. denied. 464 US 991, 104 S. Ct. 481 (c. 1983) ("Although
missing element here does not describe overt illegal behavoir,
it is nontheless essential in a federal indictment because it es-
tablishes the Court's jurisdiction.") The absence of prejudice to
the defendant in a traditional sense does not cure a substantive,
jurisdictional defect in an indictment. <u>United States v. Smith</u>, 553
F.2d 1239, 1242 (10th Cir. c. 1977).

The Code of the Laws of the United States of America,
84 Stat. 1260, and 84 Stat. 1265, codified at 21 U.S.C. §§ 841(a),
846, are <u>not</u> statutes nor can they be construed as such, if  con-
struction is necessary, recourse <u>must</u> be had to the original stat-
utes themselves. <u>Murrell v. Western Union Tel. Co.</u>, supra. The Code
is a prima facie statement of the Statute Law of the United States
(c. 1789), the statutes collected in it did not change their mean-
ing nor acquire any new force by their inclusion. At Black's Law
Dictionary Seventh ed., <u>prima facie</u> is defined:

> Prima facie, adv. [Latin] At first sight; on first
> appearance <u>but</u> <u>subject</u> to <u>further</u> <u>evidence</u> or <u>information</u>
> [underscore added]

> Sufficient to establish a fact or raise a <u>presumption</u>
> unless disproved...

At Black's Law Dictionary 6th ed., <u>due</u> <u>process</u> is defined:

> ... every <u>material</u> fact which <u>bears</u> on the question of <u>right</u> in
> the matter involved ...
> If any question of fact be conclusively <u>presumed</u> against him, this
> is <u>not</u> due process of law. [underscore added]

The evidence and conclusions of fact are irrefutable; the Code, in and of itself, is not <u>competent</u> evidence to comport with due process requirements, <u>nor</u> has Congress sought to extend such authenticity to the Code. See, Little and Brown's version of the Code, supra; compared to 1 U.S.C. 204(a). Petitioner asserts that, he has conclusively proven that the Code is <u>not</u> the statute Law of the United States, supra. The official source to find United States law is the Statutes at Large and the United States Code is <u>only</u> <u>prima facie</u> evidence of such laws. <u>Royer's, Inc. v. United States</u>, C.A.3 (Pa.) 265 F.2d 615 (c. 1959). 21 U.S.C. §§ 841(a) and 846, have not even been enacted into positive law as to even be considered (legal evidence), See, <u>United States v. Welden</u>, U.S.Mass. 84 S.Ct. 1082, 377 US 95, (c. 1964). It's prima facie authority is repugnant to due process, as defendant was unable to ascertain source of authority <u>nor</u>, legislative construction, as the Code factually disclaims legislative construction. See, Sec. 19, Title 18, 1934 ed. Also See, <u>United States v. Carll</u>, supra. <u>Stirone v. United States</u>, 361 US 212, 4 L.Ed. 2d 252, (c. 1960). The Sixth Amendment to the Constitution requires that a defendant be informed of "the nature and the cause of the accusation." The Supreme Court of the United States has stated that one of the protections in which an indictment contains the elements of the offence intended to be charged and <u>sufficiently</u> apprises the defendant of what he must be prepared to meet. <u>Russell v. United States</u>, 369 US 794, 763, 82 S.Ct. 1038 (c. 1962). Accordingly, Petitioner was sentenced in accordance with 98 Stat. 1998, codified at 18 U.S.C. § 3582. However, 18 U.S.C. § 2 et seq., it disclaims legislative construction, therefore, recourse can

only be had to the original statute themselves. This fatal flaw,
as with 21 U.S.C. §§ 841(a) and 846, removed the ability from Peti-
tioner to procure a sufficient defense, absent knowledge as to the
purpose, authority, and/or authenticity of the Code, coupled with
the fact that its prima facie nature entails that its authority is
subject to further evidence and information. Essential facts such as
application, persons whom its regulations are sought to effect,
inter alia, jurisdiction, etc., are necessary elements in a charging
bill of indictment as to fully apprise Petitioner of what he must be
prepared to meet. Thus, from the claims asserted, this Court should
review the error as plain. Petitioner claims should also be reviewed
within the structures of the Supreme Court's decision in United States
v. Alano, ── US ──, 113 S. Ct. 1770, 123 L.Ed. 2d 508 (c. 1993),
the Supreme Court defined plain error as (1) error (2) that is plain
and (3) affects subtantive rights. Id. at ── ── ──, 131 S. Ct. at
1776-78. Indeed, there can be no question that the error was plain,
obvious enough for this Court to correct it. Moreover, there should
be no question the error affected Petitioner's substantive rights to
a grand jury indictment, and further violated Petitioner's Fifth and
Sixth Amendment Constitutional Rights. For the reasons herein, the
United States District Court for Maryland was divested of subject
matter jurisdiction, and subsequently personal jurisdiction over Pe-
titioner. This jurisdictional defect as to Count (one) is not amena-
ble to harmless error, nor can Petitioner waive subject matter juris-
diction. Where a federal court is without jurisdiction of the offence,
judgement of the offence is void on its face. Baumen v. United States

CCP Louisiana, 156 F.2d 534 (c. 1946). And where the question of jurisdiction of the court over the person, the subject matter, or over the place where the crime was committed, can be raised at anytime; it is never presumed, but must always be proved; and it is never waived by a defendant. United States v. Rogers, 23 US 658 (c. 1885). Thus, procedural default rules are inapplicable here, in the instant action, due to the jurisdictional nature of the claims raised by Petitioner as to a Constitutionally defective indictment and defense counsel's incompetent and erroneous advice, coupled with the fact of the nature of the court, offence, and the jurisdiction thereof, was never disclosed, nor proferred. It is elementary, that every ingredient of a crime must be charged in the bill, a general reference to the provisions of the statute being insufficient. United States v. Spruill, 118 F.3d 221 (4th Cir. c. 1997).

Petitioner asserts that he was never charged with the lawful statute Law of the United States, because to do so, would expose the fraud, coupled with the fact that the United States (c. 1789), the lawful government would have to be the real party of interest, and sue in its own name, not its instrumentality/agency, United States of America. See, § 9, 1 Stat. 76. Also See, indictment, JFM-93-0419, cited the Code for source of authority, (i.e., 21 U.S.C. §§ 841, 846, not the statute Law of the United States. Offences against the United States, are those which are abriged in the course of a implementing statute. The Code is not a statute, therefore, Petitioner has not violated any Laws of the United States. In United States v. Grossman, 1 F.2d 941 (c. 1924), (held "There is no federal common law. There

are no offences against the United States, save those declared to

be such by Congress. ... is not an indictable offence under the

acts of Congress because it is not expressly set forth in the

Criminal Code (35 Stat. 1088) and is not in violation of any cri-

minal statute of the federal government.") [underscore added] See,

United States v. Weldon, 377 US 95, 84 S.Ct. 1082.


### Petitioner claims that he is actually innocent of the charged violations of 21 U.S.C. §§ 841(a), 846

### Claim V


To establish actual innocence, a defendant must establish that

in light of all evidence, it is more likely than not, no reasonable

juror would have convicted him. Schulp v. Delo, 513 US 298 (c. 1995).

A defendant must show —— at the threshold —— both a Constitutional

violation and a colorable showing of [actual] innocence. Park v.

Reynolds, 958 F.2d 989 (10th Cir. c. 1992).

That determination must be made by a jury based upon a valid

indictment. Lockett v. Puckett, 988 F.Supp. at 1029.

Accordingly, because Petitioner's indictment is missing essen-

tial elements to the offence he stands convicted of; (i.e., failed

to charge crimes against the United States by Statute Law, this omi-

ssion is fatal, coupled with the fact, that Respondent failed to

promulgate 21 U.S.C. §§ 841(a), 846, as mandated by 5 U.S.C. § 552,

and 44 U.S.C. § 1505(a), supra.) Therefore, Petitioner has in fact

violated no implementing regulation of statute law, thus cannot stand

convicted of such, as it is no law, i.e., 21 U.S.C. §§ 841(a), 846, and the judgement of conviction against Petitioner is void on its face, [et sic] divested the [c]ourt of jurisdiction over the subject matter and Petitioner. Nor, can Respondent rebut or present any persuasive or admissible evidence of Petitioner's guilt that would surmount the claims herein asserted and maintained.

Accordingly, had Petitioner been properly advised as to all essential elements and material facts surrounding the offence charged, he would not have pled guilty and absent the essential elements from the indictment, the non-promulgation of 21 U.S.C. §§ 841(a), 846, the conviction against Petitioner is void under the Constitution of the United States, and the Laws made in pursuant thereof.

The above asserted compels, that Petitioner is actually innocent of his conviction. See, Bousely v. United States, 532 US 64, 118 S. Ct. 1604, 140 L.Ed. 2d 828 (c. 1998), (The Supreme Court remanded Bousely, because the District Court had not considered his Actual Innocence Claim. On remand, the Court was ordered to allow Bousely to make the showing, and if he did so, to consider on the merits his claim of an unintelligent plea.) Thus, the moving party is entitled to an evidentiary hearing before any adverse rulings.

Abatement of Rights:

Petitioner, further claims and asserts his Fourth Amendment Constitutional Right to Complaint in the instant matter. 1 Stat. 97. Respondent with willful, knowing, malicious and evil intent, caused the oppression of Petitioner's personal Liberty, with long-term

imprisonment; abatement of his Fifth, Sixth, Seventh, and Ninth

Amendment Constitutional Rights, and Thirteenth Amendment Con-

stitutional protection (as claimed, declared and asserted herein

the 4 corners of this instrument). Respondent, further procured

acts against Petitioner which violated the Statute Laws of the

United States; to wit, misprision of felony, R.S. § 5390; false and

fictitious claims, § 35, 35 Stat. 1095; Extortion, § 85, 35 Stat.

1104; aiding and abetting, R.S. §§ 5323 to 5427, § 332, 35 Stat. 1152;

Accessory after the fact, R.S. §§ 5533 to 5535, § 333, 35 Stat. 1152;

Conspiracy against Rights, R.S. § 5508, § 19, 35 Stat. 1092; Depriva-

tion of Rights under colof of law, R.S. § 5510, § 20, 35 Stat.

1092; Sale into involuntary servitude, §§ 248, 271, 35 Stat. 1139,

1142.


### Claims for Relief


I.

     Petitioner, asserts that Respondent laboring under undue

influence, oppression, fraudulent concealment of material facts,

and unconscionable advantage, subjected Petitioner to private law;

(i.e., The Code of the Laws of the United States of America), of

which this undisclosed material fact removed any actual notice of

the nature and cause of the accusations against him; that Petitioner

was (vi et armis) made subject to [a] territorial court subject to

the sovereignty of the United States per Congress' plenary power un-

der Art. IV, § 3, cl. 2 of the Constitution of the United States, absent

Petitioner being amenable to this territorial jurisdiction of
Congress, as Petitioner is a citizen of the sovereign several State
of Maryland, <u>not</u> a geographical citizen of the United States, or
14th Amendment territorial citizen. Petitioner never waived his
Seventh Amendment Constitutional Right to trial by jury at common law,
and was so effectively denied this Right in a Art. IV, territorial
court where Art. III, judicial power does not extend. <u>American Ins.
Co. v. Canter</u>, supra. Petitioner cannot waive herein enumerated Con-
stitutional Rights while laboring under undue influence, and the
fraudulent concealment of material facts procured against him by
Respondent. Petitioner, asserts that the private law, Code, disclaims
legislative constructive, coupled with the fact that it is not a
statute, but a <u>prima facie</u> statement of the statue law, and because
recourse of necessity must be had to the original statutes themsel-
ves, the Code, i.e., 21 U.S.C. §§ 841(a), 846, violated Petitioner's
Fifth Amendment Right to not be deprived of life, liberty, or property
without <u>due process</u> of law, as the Code in and of itself, determines
no authority, authenticity, nor can it be construed as competent evi-
dence. See, <u>Murrell v. Western Union Tel. Co.</u>, supra.  Petitioner
did so in open court act upon the undue influence and the fraudulent
concealment of material facts procured by Respondent against him,
causing irreparable injury to Petitioner, by seven years of continued
imprisonment.

Wherefore, Petitioner's conviction should be vacated with
prejudice for all claims for relief as asserted herein.

## II.

Petitioner, asserts that Respondent's use of unpromulgated regulatory statutes, (i.e., 84 Stat. 1260 and 84 Stat. 1265, codified at 21 U.S.C. §§ 841(a), 846), violated Petitioner's Fifth and Sixth Amendment Federal Constitutional Rights, where the non-promulgation of the subject statute, removed any actual or constructive notice, thereby never being informed as to the nature and cause of accusation against him; that he was never informed of the regulations, penalties, nor application of such; further, no [person] may be adversely affected by any regulation, absent such promulgation, resulting in no law. At 5 U.S.C. § 552(a)(1), we find for authority:

... a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. [underscore added]

This requirement is also mandated by Executive Order 11030; 49 Stat. 500, § 5(a)(3), codified at 44 U.S.C. § 1505(a); 80 Stat. 379, codified at 5 U.S.C. § 552, and 84 Stat. 1245, codified at 21 U.S.C. § 811 (a)(1). Also See, Cervase v. Office of Federal Register, supra. Petitioner, asserts that Respondent has failed to comply with any of the aforementioned authority, [et sic] 21 U.S.C. §§ 841(a), 846, is void on its face, as it applies to Petitioner, and as much his conviction/ judgement is void ab initio, which consequently divested the Court of subject matter jurisdiction. Petitioner, further claims that his Thirteenth Amendment Constitutional protection was violated, where Respondent used [t]hese unpromulgated statues to procure conviction against him, as it is no crime or law, as it applies to Petitioner.

Wherefore, Petitioner's conviction should be vacated with prejudice for all claims for relief as asserted herein.

III.

Petitioner, asserts that Congress' erection of its political subdivision, agency and/or instrumentality, i.e., United States of America, into the jurisdiction of the sovereign several State of Maryland, exceeded Congress' specifically enumerated power therein the Constitution of the United States, Art. IV, § 3, cl. 1, the a priori of such violated Petitioner's Fifth, Sixth, Seventh, and Ninth Amendment Constitutional Rights.

Firstly, Petitioner asserts that he has a Fourth Amendment Constitutional Right not to be made the subject of arbitrary government; that at no time was he ever informed by defense counsel George Mc-Dowell, nor the Court, that he was in fact being prosecuted by the United States of America, not the United States (c. 1789); that he was presumed to be a geographical citizen of [t]his United States of America, and subject to its jurisdiction; that the fraudulent concealment of these material facts, removed any notice of the nature of the accusations against him, nor does the private law that this [e]ntity exercises apprise Petitioner of its authority, construction, or competency. This coupled with the non-promulgation of [t]he law territorially applicable in possessions of the United States, denied Petitioner of his Fifth and Sixth Amendment Constitutional Rights.

The framer's of the Constitution sought to protect the demarcation between the States in this Union, and to maintain the Federal, State balance. The jurisdictional sovereignty of the State of Maryland is exclusive and cannot be infringed, absent specifically enu-

merated powers therein the Constitution.

Petitioner, asserts that he has a Ninth Amendment Constitutional Right, and does so <u>not</u> of the Right alone, exercise his inalienble Right by [G]od, to life, liberty, and the pursuit of happiness, to which Petitioner has never surrendered, nor waived. These Rights are endowed by Our Creator, that all men are created equal, no less than pharaoh, and no higher is he. Petitioner asserts this inalienable Right of which is enumerated in the Ninth Article of Amendment to the Constitution was abriged and abated by Respondent, in consequence of all stated claims herein this Writ, and Claims for Relief.

Wherefore, Petitioner's conviction should be vacted with prejudice for all claims for relief as asserted herein.

## IV.

Petitioner, asserts that in order to satify due process requirements, the bill of indictment must include every essential ingredient of the charged offence. <u>Stirone v. United States</u>, supra; Also see, <u>Russell v. United States</u>, supra. It must contain the essential elements of the offence, so as to apprise the defendant of what he must be prepared to meet. In the instant cause of action, the United States Code, titles 21 U.S.C. §§ 841(a), 846, is a <u>prima</u> <u>facie</u> statement of the Statute Law, it is <u>not</u> the Law, <u>nor</u> is it a statute. <u>Murrell v. Western Union Tel. Co.</u>, supra. The official source to find United States Law is the States at Large. <u>Royer's, Inc. v. United States</u>, supra. The Code in and of itself, is not <u>competent</u> evidence to comport with <u>due</u> <u>process</u> requirements, nor has Congress sought to extend

such authenticity to the Code. See, Little and Brown's publication, supra. Moreover, this particular subject title, has not even been enacted into positive law as to be considered legal evidence. The definition of prima facie is fatal. Petitioner, was completely unable to ascertain source of authority, purpose and/or authenticity, coupled with the fact that its prima facie nature entails that its authority is subject to further evidence and information. Essential elements such as application, persons whom its regulations are sought to effect, jurisdiction, etc., are necessary elements of legislative construction, that ultimately comprise the statute as evidenced in the bill of indictment. The Code factually disclaims legislative construction; that no inference is to drawn from any section of the Code, as it pertains to legislative construction, supra; if construction is necessary, recourse must be had to the original statutes themselves. It is impossible to draw any conclusive foundation of law in consulting the Code alone, therefore, it lacks essential and necessary elements to have sufficiently apprised Petitioner of what he must have been prepared to meet. This omission, violated Petitioner's Fifth and Sixth Amendment Constitutional Rights. Wherefore, the judgement of conviction is void on its face. Baumen v. United States CCP Louisiana, supra. This jurisdictional defect in [t]he indictment, divested the United States District Court for Maryland, of subject matter jurisdiction.

At all times in open Court proceedings, Petitioner labored under these fraudulent concealment of material facts, (as stated above), procured by Respondent against Petitioner, which caused the irreparable injury to Petitioner, by seven years of long-term imprisonment.

Wherefore, Petitioner's conviction should be vacated with prejudice for all claims for relief as asserted herein.

**V.**

Petitioner, asserts that to establish actual innocence, a defendant must establish that in light of all evidence, it is more likely than not, no reasonable juror would have convicted him. Schulp v. Delo, supra. It is clear that Petitioner's indictment is missing essential elements necessary to comport with due process requirements and inherently necessary to establish the Court's jurisdiction. Further, Respondent's failure to promulgate implementing regulations for 21 U.S.C. §§ 841(a), 846, supra, resulted in deprivation of Petitioner's Fifth and Sixth Amendment Constitutional Rights, as such 21 U.S.C. §§ 841(a), 846, is no law, as it applies to Petitioner. Therefore, Petitioner stands actually innocent of the charged titles.

Petitioner, submits that he has shown both a Constitutional violation, and better than a colorable showing of actual innocence. Park v. Reynolds, supra.

Accordingly, for all Claims and Claims for Relief, as asserted herein the (4) corner's of this Writ, had Petitioner been properly advised as to all essential material facts, and had not been made the subject of undue influence, oppression, unconscionable advantage, the fraudulent concealment of material facts, procured by Respondent against him, he would not have pled guilty.

The above asserted compels, that Petitioner is actually innocent of his conviction, and in as much, his conviction should be vacated with prejudice for all claims for relief as asserted herein. See, Bousely v. United States, supra.

## **Relief Requested**

Petitioner, requests, that for the foregoing analysis and positive evidence founded upon all (material facts, as asserted herein), mandates of law and to the preservation of the Constitution of the United States, verified by Oath of Affirmation, respectfully moves this Honorable Court to vacate his conviction with prejudice, as to 84 Stat. 1260 and 84 Stat. 1265, codified at 21 U.S.C. §§ 841(a), 846, as to Claim 1, 2, 3, 4, and 5, and for all Claims for Relief as asserted herein; (2) That his guilty plea be declared void ab initio in consequence of Claims herein presented and asserted; (3) and further grant Petitioner an evidentiary hearing so that he may effectively present and show his Claim of Actual Innocence.

---

Statements from the Founding Fathers: Federalist No. 2, 41.

... " Every man who loves peace, every man who loves his country, every man who loves liberty, ought to have it ever before his eyes, that he may cherish in his heart a due attachment to the Union of America, and be able to set due value on the means of preserving it."

... " and I sincerely wish that it may be as clearly foreseen by every good Citizen, that whenever the dissolution of the Union arrives, America will have reason to exclaim in the words of the Poet,  " Farewell, A Long Farewell, To All My Greatness."

---

No Signature hereto as Witness, does not divest, Corey Lorenzo Woodfolk, of any reserved Right by unilateral association, nor opertion of any undisclosed law.

**Signed/and Dated** this *22* day of *January* _____, Anno domini

2001, at Lewisburg, country of Pennsylvania state Republic.

**Witness My Hand/and Seal,** *Corey Lorenzo Woodfolk* , Sui Juris
        Corey Lorenzo Woodfolk
        c/o Post Office Box [1000]
        Lewisburg; near [17837],
        Pennsylvania


**In Witness Thereto,** a natural person, Who is a living human

being, Whose Spiritual Name is, Corey Lorenzo Woodfolk, came Before

Me, on this *22* day of *January* _____, Anno domini 2001, and affirmed

and declared, that the facts and matters contained herein the (4)

corners of this Instrument, are true, correct, and complete, not

misleading, asserted positively, In Truth before God, at Lewisburg,

country of Pennsylvania state Republic;

**Witness My Hand/and Seal** _____, acting Notary.
                Notary Public

**"A. GIORDANI, PAROLE OFFICER"**
**AUTHORIZED BY ACT OF JULY 7, 1955**
**TO ADMINISTER OATHS**
**(18 U.S.C. 4004)**

        [My commission expires on _____]

70.